**UNITED STATES v. GUERRINA.**

**Cr. No. 17078.**

United States District Court
E. D. Pennsylvania.

May 5, 1953.

Gerald A. Gleeson, U. S. Atty., and Charles H. Greenberg, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert M. Taylor, Philadelphia, Pa., for defendant.

CLARY, District Judge.

On February 19, 1953 an Indictment in four (4) counts was filed against the defendant charging him with the wilful attempt to defeat and evade Internal Revenue Laws of the United States for the years 1946, 1947, 1948 and 1949, in violation of 26 U.S.C. § 145(b). On February 26, 1953 defendant filed a Motion to Suppress Evidence and To Return Property, the petition in support of said motion alleging that certain papers and documents were obtained from the files of the defendant in violation of rights guaranteed to him under the Fourth and Fifth Amendments to the Constitution, in that the said papers and documents were obtained by means of an illegal search and seizure and without advice to the defendant that the information sought was in connection with an investigation of the defendant looking toward criminal prosecution, and that he was not warned of his constitutional right not to be a witness against himself and that anything he might say or any information he might make available might be used against him in a court of law. The Government filed an answer to the motion contending in effect that the search was conducted with the consent of the defendant and that the defendant had waived his privilege against self incrimination. A hearing was held on the issues thus raised by the motion and answer on March 31, 1953 and from the testimony there adduced I find the following to be the facts.

On or about December 12, 1949, Internal Revenue Agent John Coram telephoned the office of the defendant and made an appointment for an examination and audit of the books and records of the defendant for the years 1946, 1947 and 1948. About one week thereafter Agent Coram arrived at the office of the defendant and with the consent of the defendant proceeded to examine certain of his records. A short time after his arrival Agent Coram was joined by another person who proceeded to work with Agent Coram in examining and recording information made available by the defendant. This latter person, whose identity was not made known to the defendant, was in fact Special Agent Pearson of the

Intelligence Unit of the Internal Revenue Bureau. The special agent was there in connection with an investigation of the defendant for possible criminal action for filing false and fraudulent returns, which fact was never made known to the defendant during the course of the examination. At no time was defendant warned either by Agent Coram or by Special Agent Pearson of his constitutional right not to testify against himself nor was he warned that anything he said or any information he disclosed to them might be used against him in a criminal proceeding.

The agents worked for several days in the office of the defendant during most of which time the defendant was present. On or about December 22nd defendant advised the agents that he was going to leave the City on December 26, 1949 and inquired whether they had everything they wanted to complete their examination. The agents advised him that they had and defendant left. While the defendant was out of the City, Agent Coram and Special Agent Pearson visited the defendant's office and proceeded to examine the contents of defendant's filing cabinets including certain invoices, records and papers not previously made available by defendant. The person in charge of the office at that time was a Miss Gladys B. Jones, who was employed by a real estate agent, and who was partially employed by the defendant. The agents did not obtain from Miss Jones permission to examine the contents of the filing cabinets nor did they ever obtain from the defendant permission to do so.

The defendant's motion to suppress evidence and to return his property is based upon two separate yet interrelated grounds. One is the constitutional guarantee in the Fourth Amendment against unlawful searches and seizures, and the second is the privilege against self incrimination contained in the Fifth Amendment. In resisting the motion the Government contends that the search was not unlawful since the examination was conducted with the consent of the defendant and, therefore, the evidence was not obtained in violation of the Fourth Amendment. It argues further that the prohibition against self incrimina-

tion is a personal privilege which may be waived by a defendant and that the defendant here waived it by not asserting it at the time the information was obtained.

■ The fundamental question to be resolved, therefore, is whether the defendant consented to the examination of the books and records having regard to the facts and circumstances existing at the time the agents availed themselves of the books and records. This problem has two facets, one factual and the other legal. First, did the defendant consent to the examination of the papers within his filing cabinets which the agents examined in defendant's absence? I find as a fact that he did not. The evidence before me clearly demonstrates that insofar as the defendant was concerned, the examination was completed when the agents left him on or about December 22, 1949. He did not contemplate their return and was surprised when he learned by a long distance telephone call that the agents had returned and had gone through his files without permission. Up until this second visit he had made available no documents concerning his 1949 business transactions, all of which were thoroughly scrutinized by the agents on the visit made in his absence. Miss Jones gave no permission to the agents and, in fact, was not authorized to give any permission. At no time did the defendant make available his entire records to the agents. When requested, he would furnish an individual item or group of items. The assumption by the agents of blanket permission either on the part of the defendant or Miss Jones was entirely unfounded.

■ The second question is a bit more difficult of determination. Did he consent to the examination of the check stubs and other records which he himself made available to the agents? In order to determine the answer to this question, the circumstances under which the alleged consent was given must be borne in mind. Special Agent Pearson testified that the purpose of his presence at the office of the defendant was to obtain evidence of fraud for contemplated criminal proceedings, but this fact was not disclosed to defendant. Here so far as the defendant knew or had been

informed his books and papers were being examined by Agent Coram to establish his proper civil liability. Nothing was said either by Agent Coram or by Special Agent Pearson to the defendant to apprise him of the true situation. As was stated in Gouled v. United States, 255 U.S. 298, at page 305, 41 S.Ct. 261, at page 263, 65 L.Ed. 647:

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable, and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, * * *".

I can see no difference between a search conducted after entrance has been gained by stealth or in the guise of a business call, and a search for criminal purposes conducted under the guise of an examination for purely civil purposes. Whether the arrangement to have Agent Coram make the appointment with the defendant was by design to obtain entrance for Special Agent Pearson, or whether it was done innocently, the effect in so far as the defendant was concerned was the same. He was deluded into giving consent to the examination of his papers and records and his action in so doing cannot be said to be voluntary in so far as making available his papers for purpose of investigation to establish fraud for criminal prosecution purposes.

Since the papers and information were obtained in violation of the Fourth Amendment, it follows that their use at time of trial would be a violation of the defendant's rights under the Fifth Amendment. Gouled v. United States, supra, wherein it was stated 255 U.S. at page 306, 41 S.Ct. at page 264:

"In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case."

Though a different result was obtained in that case, there is language in Hanson v. United States, 8 Cir., 186 F.2d 61, which would seem to support the result here reached. In that case, defendant's objections to evidence based upon admissions of the defendant and documents which defendant delivered to government auditors before indictment were overruled. That ruling was held to be proper by the Court of Appeals for the 8th Circuit, but in reaching its result the court said as follows, 186 F.2d at pages 64–65:

"The contention of the defendant is based on the Fifth Amendment to the Constitution of the United States, which in effect provides that no person 'shall be compelled in any criminal case to be a witness against himself'. It is the contention of the defendant that the words 'in any criminal case' are not

limited to the actual trial and that they should be so construed as to include the request of the Revenue Agent for the documents made use of in the prosecution against the defendant. The privilege is a personal one and need not be asserted. At the time defendant produced his cancelled checks and bank statements and made certain admissions to the Revenue Agent he was not under arrest; neither had he been charged with any offense, nor was he threatened with prosecution or otherwise coerced. The papers referred to were his private papers and he might have stood on his constitutional right to decline to produce them. This he did not do but without compulsion he voluntarily delivered the documents to the Revenue Agent. Neither was he under any compulsion to make the admissions which he made to the Revenue Agent. But it is said that he should have been warned that the documents might be used as evidence against him. *At the time in question there is no evidence that a criminal prosecution was in contemplation.* The government agent, in the performance of his duty, went to defendant, advising him that he wished to check his income tax returns for the years in question. *There is nothing to indicate that there was even any suspicion at that time that the defendant was guilty of a criminal offense. In these circumstances we think there was no occasion nor necessity for warning the defendant that any statements he might make or documents he might produce would be used against him in a criminal prosecution."* (Emphasis supplied.)

The very factors referred to in that opinion as being lacking and which by implication were necessary to sustain the plea of the Fifth Amendment are present in this case. Here, at the time the defendant produced his papers, prosecution was contemplated, whereas, in the Hanson case, there was nothing to indicate that there was any suspicion at the time of the examination that the defendant was guilty of a criminal offense. In the instant case, we have the very frank testimony of Special Agent Pearson that he had reason to believe that the defendant had been guilty of fraud and that his purpose in making the examination of his papers was to obtain evidence for contemplated criminal prosecution. With these different circumstances I am of the opinion that the Court of Appeals for the 8th Circuit would have reached the conclusion that the defendant was entitled to a warning before the information could be said to have been obtained from the defendant without doing violence to his privilege under the Fifth Amendment. cf. also Himmelfarb v. United States, 9 Cir., 175 F.2d 924, at page 938.

Where Federal officers violate the Constitution in obtaining evidence "the federal courts refuse to hear it, esteeming the upholding of the constitutional guaranties against abuse of governmental power more important in such circumstances than the discovery of the truth." Foley v. United States, 5 Cir., 64 F.2d 1, 4. And "* * * the forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210, 220.

To permit evidence to be obtained against a defendant by the means here employed (however innocently it may have been done in this case) would be to encourage overzealous and less scrupulous officers and agents of law enforcement agencies to chip away rights guaranteed by the Constitution to defendants by trick and artifice, to do what could not be done in court proceedings, i. e., compel a defendant to testify against himself.

The dividing line between proper investigative procedures and those which encroach improperly upon constitutionally guaranteed rights is shadowy and ill-defined, but the device here used places itself clearly on the wrong side of that line. I find that the defendant's constitutional rights were violated in that he was induced under a misapprehension of the true facts

and circumstances to give his consent to an examination under circumstances which rendered that consent ineffective and the search unreasonable and therefore unlawful. His rights were further violated in that he was induced by reason of the same misunderstanding of the true facts and circumstances to give testimony against himself without proper warning. The evidence and information so obtained by the Government may not be used against the defendant and the motion to suppress evidence and to return property will be granted.

The Government has cited several cases in support of its contention that defendant's rights were not violated. A careful reading of those cases indicates that some are distinguishable and others wholly inapplicable.

Massei v. United States, 4 Cir., 295 F. 683, is cited for the proposition that admission into evidence of invoices voluntarily furnished by defendant to a prohibition agent on request, before his arrest, was not a violation of his constitutional rights even though he was not warned that they might be so used.

The facts of that case are only briefly treated in the opinion, but it appears clear that the defendant took the stand in that case on his own behalf and the invoices so obtained were introduced in the cross-examination of the defendant. No citation of authority is needed to illustrate that a defendant waives his privilege against self incrimination by taking the stand on his own behalf. The court further found that in that case the invoices were used for the very purpose for which the defendant had voluntarily surrendered them, i. e. to aid in checking the extent of his purchases and sales of extracts.

Jarecki v. Whetstone, D.C., 82 F.Supp. 367, cited as authority that 26 U.S.C. § 3654(a), regarding proceedings to compel attendance, testimony and production of books, etc. of a taxpayer to aid the investigation by the Collector of Internal Revenue is not violative of either the Fourth or Fifth Amendments. That court decided only that the section is not per se violative of the Fourth and Fifth Amend-ments. The ruling of the District Court directing the taxpayer to appear with all books and records was appealed and the appeal dismissed because the order was interlocutory. Jarecki v. Whetstone, 7 Cir., 192 F.2d 121. In the course of its opinion the Court of Appeals by way of dictum indicated that if the defendant regarded the order as violative of fundamental rights, defendant could disobey the order, be adjudged in contempt, and then appeal from that decision. The Jarecki ruling cited by the Government, therefore, has no persuasiveness on the question whether a taxpayer may be compelled to testify against himself by producing his records and testifying in response to summons properly issued. It should be noted also that the Jarecki case was a civil proceeding.

Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774, held that where consent is freely and voluntarily given, motions to suppress evidence thus obtained were improperly granted.

That case turned on the facts. The District Court, 56 F.Supp. 805, found that the agents had identified themselves and asserted that they had the power to demand the records sought, that they had *demanded* the records, and that defendants submitted to the demand, which was not a consent constituting a waiver of constitutional rights. The Court of Appeals made its own finding of fact based on affidavits and determined that the investigators *requested* permission to examine the records and that consent was freely and voluntarily given.

Were the facts in this case such as to disclose voluntary action on the part of Guerrina, I would not hesitate to hold that he had waived his constitutional rights but, as hereinbefore stated, the subterfuge employed by the agents negatived his consent and rendered his action involuntary.

In re White, D.C., 98 F.Supp. 895, involved only the question whether a taxpayer had made his voluntary disclosure before a fraud investigation had been initiated so as to entitle the taxpayer to immunity from criminal prosecution under the then existing regulation. It was held that the investigation had been initiated before the voluntary disclosure and that therefore

the taxpayer was not entitled to the immunity.

United States v. Hoyt, D.C., 53 F.2d 881, involved books and papers of a corporation of which defendant was sole stockholder and it was held that the privilege did not extend to corporate books and records. There also there was a question relating to the effect of bankruptcy upon the constitutional privileges. It was further held that under the provisions of the bankruptcy law, by coming through his own acts under the substantive law of insolvency, a defendant has involved himself in a waiver of his right that his papers should remain wholly inviolate and his constitutional rights are in some measure impaired.

Fuller v. United States, 2 Cir., 31 F.2d 747, also involved corporate papers to which the privilege does not extend.

One final point the Government has commented upon, the passage of time between the examination of these papers and the filing of the motion to suppress. That point was dealt with in Takahashi v. United States, 9 Cir., 143 F.2d 118, 122:

"* * * it is hornbook law, so far as suppression of the evidence at a trial is concerned, that even the strict rule of the federal courts requires only that the motions be made in advance of trial so that the judge will not have to rule thereon while the jury is waiting."

Here, the motion was made within a matter of days after the filing of the indictment and well in advance of trial and is, therefore, timely.