**UNITED STATES of America**
v.
**Maurice WHEELER.**
**Cr. No. 14337.**

United States District Court
W. D. Pennsylvania.
March 20, 1957.

matters relating to the same case. In the instant proceeding, however, by reason of the involvement of Judge Miller in a most prolonged civil trial, and since this member of the court was engaged in hearing criminal cases under the program of rotation now in effect in this District, Judge Miller consented to my hearing said motion and assigned the same to me because of its pressing urgency, involving as it did, the disposition of a preliminary motion essential to the trial of a criminal action which had been pending for a period in excess of two years.

I advert to the rule of law that a ruling on motion to suppress evidence becomes the controlling rule in the case as does a ruling made during trial. The objection may not be renewed at the trial. United States v. Jennings, D.C., 19 F.R.D. 311; Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37.

Furthermore, if a motion to suppress is granted, such order carries finality so as to justify appellate review. United States v. Ponder, 4 Cir., 238 F.2d 825.

The soundness and efficacy of this rule from the point of view of the efficient and expeditious administration of a trial are most apparent. To permit the renewal of such motion during trial is merely to call for a repetition of the same testimony previously elicited, and to result in the taxing of the time and energies of counsel and the court on a matter purely repetitive and a useless performance.

The defendant is saved harmless in view of the fact that he is not required to renew his motion or press his objection, since he is not barred from pressing it upon appeal, if he merely abides the court's ruling and tries the remainder of his case. Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 73 L.Ed. 275.

Accordingly, upon most reflected judgment and analysis of the decisions most recently pronounced, I must conclude that whatever determination shall be made of the instant motion to suppress shall

---

D. Malcolm Anderson, Jr., Pittsburgh, Pa., for plaintiff.

Alexander Cooper, Pittsburgh, and Robert M. Taylor, Philadelphia, Pa., for defendant.

GOURLEY, Chief Judge.

This is a petition for rehearing on a motion to suppress evidence in connection with an indictment alleging evasion of income taxes for the year 1950, 26 U.S.C.A. § 145(b).

The matter was initially heard by my associate, Judge Miller, who entered opinions and orders on May 1, 1956 and August 16, 1955 denying said motion.

Parenthetically, I wish to state that in the interest of consistency and uniformity, this court has followed the policy of having the same judge hear all

become the law of the case and binding on the trial court.

■ In view of the foregoing, since Judge Miller was not available to hear the petition for rehearing and entered an order assigning all matters relative to the matter to this member of the court, any order which I might enter will be consistent with practice followed in this Circuit where questions arise in a multiple complement court. TCF Film Corp. v. Gourley, 3 Cir., 240 F.2d 711.

The issue, therefore, is whether under the testimony presented before Judge Miller which has been incorporated in the record of this proceeding and the additional testimony presented before this member of the court, including that of the defendant who waived immunity and agreed to be bound by said testimony, justification exists to suppress the evidence upon which the indictment is premised.

In the hearings before Judge Miller testimony was presented through Byron Krieger and Robert J. Madden, Internal Revenue Agents, and Robert W. Corey, Chief of the Intelligence Division of the Internal Revenue Service for the Pittsburgh District. Before this member of the court testimony was elicited from Ross Thompson, staff officer in the Inspection Service; Andrew L. Hankowski, Internal Revenue Agent; George H. Lemay, Internal Revenue Agent and Defendant Maurice Wheeler, and Byron Krieger was recalled for additional testimony. Thompson, whose primary function involved investigation of complaints against Internal Revenue Personnel, maintained his post in Washington and came to Pittsburgh on the basis of an affidavit prepared by one Stanley Barczak alleging criminal wrongdoing on the part of certain Internal Revenue personnel and in addition thereto included defendant's name.

To investigate these allegations a task force of Thompson, Hankowski, Lemay and Robertson came to Pittsburgh. Another person assigned to aid them was Internal Revenue Agent Krieger of Detroit. Thompson told Krieger to conduct a routine income tax investigation of defendant with the additional mission of ascertaining involvement of Internal Revenue employees and defendant in any wrongdoing with a view to obtaining facts which would lead to criminal prosecution. Thompson testified that no suspicion of criminal evasion of income tax violation on the part of defendant existed at the time the investigation was launched, but that the routine investigation to determine civil liability was conducted with the view to ferreting out acts of wrongdoing on the part of Internal Revenue employee with any other person. That the underlying purpose in investigating defendant's tax return was to find evidence of criminal wrongdoing on the part of Internal Revenue employees and whether defendant was implicated in any such wrongdoing. That if defendant were implicated in such criminal wrongdoing, that he was to be included as a possible subject for criminal prosecution. That the representations of a routine tax investigation were but a pretext to accomplish the underlying purpose.

Krieger testified that he proceeded to examine defendant's income tax returns and books without disclosing his special instructions, which examination did not disclose any criminal connection with personnel of the Internal Revenue Department but gave evidence upon which to premise prosecution of defendant for income tax evasion.

Testimony of the other agents merely elaborated upon or gave further substantiation to these developed facts.

In view of the testimony and admissions of the divers government investigators, apparently undisputed except for minor inconsistencies and discrepancies between the witnesses, the question, although involved and intricate, can be simply posed as follows:

Is a fraud and deceit practiced upon a taxpayer in violation of constitutional rights where an agent of the Internal Revenue Service is assigned to inspect the records of the taxpayer for the twofold purpose of determining if the taxpayer's return is regular and free from

civil liability and also to determine whether taxpayer is involved in wrong-doing with personnel of the Internal Revenue Service with a view to obtaining facts which would lead to criminal prosecution, and the agent represents to the taxpayer that the sole purpose of the inquiry is to determine if the taxpayer's return is regular and free from civil liability, when in truth and fact the additional purpose was intended to determine whether the taxpayer engaged in any illegal or unlawful activities with any employee of the Revenue Service, and as a consequence of said examination no evidence of criminal wrongdoing with personnel of the Internal Revenue Service is uncovered but evidence upon which to premise criminal prosecution for income tax violation is secured.

The defendant's motion to suppress evidence and dismiss the indictment is based upon the constitutional guarantee against unlawful searches and seizures of the Fourth Amendment and the privilege against self-incrimination contained in the Fifth Amendment. In resisting the motion the government contends that the search was not unlawful since the examination was conducted with the consent of the defendant, and that the records were voluntarily and understandably given.

■ It has been expressly held time and again in tax evasion and other criminal cases that it is not essential to the admissibility of evidence secured by officers of the law from a defendant that he should be first warned that the information might be used against him in a criminal case, provided that it was voluntarily and understandably given. United States v. Burdick, 3 Cir., 214 F. 2d 768.

I do not hold to the thesis that the statement that the purpose of an investigation is a routine audit is not the equivalent of a promise that only civil liability will be considered regardless of what the examination reveals.

■ The taxpayer has the legal duty to keep records and file returns, and the government has the right and the duty to check those records and returns. If he refuses to cooperate and remains silent, the taxpayer runs the risk of having incorrect inferences drawn from whatever facts the agents discover; and his attitude certainly does not lessen the suspicion. On the other hand, if he cooperates and converses freely with skilled investigators, he may be, and usually is, furnishing evidence for use against himself in a subsequent criminal prosecution. However, this is not to say that there is upon the government an affirmative duty to warn a taxpayer at the beginning of an investigation, the breach of which would render inadmissible any evidence so obtained. Montgomery v. United States, 5 Cir., 203 F.2d 887; Vloutis v. United States, 5 Cir., 219 F.2d 782; United States v. Achilli, 7 Cir., 234 F.2d 797.

Admittedly, defendant, as a member of the bar, would have been conversant with his constitutional rights, had the agent disclosed the purpose of his investigation, and I do not feel that the mere failure to admonish defendant of his rights would, of itself, justify the granting of a motion to suppress the evidence. Coupled, however, with the more salient reason of tricking defendant into releasing his books and records under the guise of a routine tax investigation, when in truth and fact the material was examined with the view of ascertaining evidence of criminal wrongdoing in conjunction with employees of the Internal Revenue Service, poses an issue which strikes at the very core of constitutional immunity.

In my judgment, the fundamental question to be resolved is whether the defendant consented to the examination of the books and records, having regard to the facts and circumstances existing at the time the agents availed themselves of the books and records. In order to determine the answer to this question, the circumstances under which the alleged consent was given must be borne in mind. Special Agent Thompson testified that one of the purposes of his investigation was to obtain evidence of criminal

wrongdoing in conjunction with third parties, but this was not disclosed to defendant. Here so far as the defendant knew or had been informed his books and papers were being examined by Agent Krieger to establish his proper civil liability.

■ Upon a most reflected review of the decisions, it is apparent that the law distinguishes between failure on the part of a government investigator to disclose the purpose of his investigation at its inception when suspicion of criminal wrongdoing exists and the discovery of criminal wrongdoing in the course of a routine investigation. To secure evidentiary matter without making such disclosure when criminal wrongdoing is suspected constitutes a fraud and deceit upon the taxpayer in violation of his constitutional rights and his right against self-incrimination. U.S.C.A.Constitution, Amends. 4, 5; United States v. Lipshitz, D.C., 132 F.Supp. 519.

■ I am satisfied that the testimony of the special investigators sufficiently establishes that a fraud and deceit was perpetrated upon the defendant at the inception of the investigation in order to secure evidentiary material with the intent to use the same against him. The fact that the criminal investigation was directed at determining criminal wrongdoing in league with personnel of the Internal Revenue Service and ultimately developed evidence which became a subject of criminal prosecution for income tax violation, does not vitiate from the initial trickery and artifice.

■ The issue is poignantly raised as to whether defendant ratified and subsequently consented to the initial examination since he agreed to permit the Revenue Agents to further retain his records after he had been notified of the finding of tax discrepancies which might serve as a basis for criminal prosecution. It is to be noted, however, that on August 4, 1953 when Agents Krieger and Madden so informed defendant, it was with the understanding that they would continue working on the records they had already possessed which related to the year 1950, and requested books and data for the tax years of 1952 and 1949. I do not accept the conclusion that since defendant consented to voluntarily release records which related to tax years other than the one for which the indictment is laid, that he thereby ratified and acquiesced to the Internal Revenue Service's illegal acquisition of the records for the year 1950. The Internal Revenue Service already had the records for 1950, and to recall said records at such late phase of the investigation would prove a nullity. In view of the information given defendant on August 4, 1953, I have no doubt that if the indictment were laid for the years 1952 or 1949, that defendant would have been deemed sufficiently apprised of his rights as to have voluntarily consented to the use of his records. But the disclosure made with reference to the years 1949 and 1952 was not made relevant to the year 1950 at the inception of the investigation, and under the facts existing on August 4, 1953, I cannot conclude that defendant's acquiescence to the Internal Revenue Service's retention of records which had already served their purpose, was an act of such a positive character as to constitute a ratification of their initial illegal taking.

The government's contention that defendant did not suffer harm, even admitting the commission of a fraud and deceit upon the defendant, since no evidence of criminal wrongdoing with Internal Revenue Service personnel was uncovered is impervious to the realities and subtleties of human conduct.

■ Whether or not the defendant would have released his files to the government had he been fully apprised of the reasons underlying the investigation, I do not know. I have always believed, however, that it is not within the court's province to resolve any such doubt against a defendant when the crucial issue of constitutional immunity is raised.

To permit evidence to be obtained against a defendant by the means here

employed would be to encourage over zealous and less scrupulous officers and agents of law enforcement agencies to chip away rights guaranteed by the Constitution to defendants by trick and artifice. The dividing line between proper investigative procedures and those which encroach improperly upon constitutionally guaranteed rights is shadowy and ill defined, but the device here used places itself clearly on the wrong side of that line. United States v. Guerrina, D.C., 112 F. Supp. 126.

In this tumultuous age of challenge and peril to free institutions everywhere in the world, the bulwark of constitutional protection upon which rests the foundation of all our freedoms, must be held sacrosanct in the application of the law. To deviate or compromise these sacred rights is to imperil our basic freedoms.

It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746; United States v. Lipshitz, supra.

I conclude, therefore, that defendant's constitutional rights were violated in that he was induced under a misapprehension of the true facts and circumstances to give his consent to an examination under circumstances which rendered that consent nugatory and the search unreasonable and therefore unlawful. His rights were further compromised in that he was required to give testimony against himself without proper warning. The evidence and information so obtained by the government may not be used against the defendant, and motion of defendant to suppress evidence will be granted.

An appropriate Order is entered.