**UNITED STATES of America,
Plaintiff,**

v.

**Henry C. REMOLIF, Lamar R. Bergen,
Harry P. Hurley and Albert M. Galli,
Defendants.**

**Cr. No. 641.**

United States District Court
D. Nevada.

Feb. 24, 1964.

John W. Bonner, U. S. Atty., Earl Johnson, Jr., Special Asst. U. S. Atty., Las Vegas, Nev., for plaintiff.

Foley Brothers, Las Vegas, Nev., Richard Huntley Foster, San Francisco, Cal., for defendants.

THOMPSON, District Judge.

Defendants have moved in advance of trial to suppress all evidence obtained by the Government by its examination of the books and records of the business known as the Saratoga Race Book owned and operated by the defendants. A hearing was held at which evidence was received on February 17 and 18, 1964.

The Court finds the following stipulated facts to be true:

1. In January of 1957, the Intelligence Division of the Internal Revenue Service opened a file concerning the operations of the Saratoga Race and Sports Book and the defendants herein.

2. During the year 1958, agents of the Intelligence Division of the Internal Revenue Service placed wagers at the Saratoga Race and Sports Book and secured wagering tickets therefrom.

3. On May 8, 1958, Special Agent Carl E. Rizer, of the Intelligence Division of the Internal Revenue Service, reviewed H. C. Remolif's income tax return and wagering excise tax returns of the Saratoga Race and Sports Book, he being the Special Agent in charge of the Intelligence Division local post of duty.

4. On July 22, 1958, the file was transferred from Special Agent Carl E. Rizer to Special Agent Albert M. Evans, of the Intelligence Division of the Internal Revenue Service.

5. On March 16, 1959, the information secured as described in Paragraph 2 above, and, in particular, the wagering tickets secured by said agents, were referred to Revenue Agent Victor A. Vasak, Jr.

6. On April 6, 1959, Internal Revenue Agent Vasak met with Albert M. Evans, Special Agent of the Intelligence Division of the Internal Revenue Service.

7. On April 8, 1959, Revenue Agent Vasak contacted H. C. Remolif, one of the defendants herein.

8. On April 16, 1959, egg crates containing records of the Saratoga Race Book were delivered to Internal Revenue Agent Vasak.

9. Commencing April 16, 1959, Revenue Agent Vasak audited the books and records and wagering excise tax returns of the Saratoga Race and Sports Book to determine whether those records and returns accurately reflected all wagers accepted by the Saratoga Race and Sports Book, and, among other things, checked wagers accumulated by special agents of the Intelligence Division of the Internal Revenue Service against the books, records and wagering excise tax returns of the said Saratoga Race and Sports Book.

10. Defendants were not advised of their constitutional rights in connection with this investigation at any time until February 4, 1960.

11. The first occasion upon which a Special Agent of the Intelligence Division of the Internal Revenue Service was introduced to the defendants in connection with this investigation was on February 4, 1960.

The Court further finds the following facts to be true as established by the evidence:

1. Revenue Agent Victor A. Vasak, who first communicated with defendant Henry C. Remolif and his accountant, Don E. Ashworth, seeking permission to examine the books and records of the Saratoga Race Book, did not warn either of them of defendants' constitutional rights and did not disclose to either of them that the case had originated in the Intelligence Division of the Internal Revenue Service or that an investigation extraneous to the audit had earlier been initiated. Revenue Agent Victor A. Vasak did not then, or at any time, affirmatively state that the purpose of the examination of books and records was a routine civil audit, or that it was not a special investigation or that it was not for the purpose of obtaining evidence for a possible criminal charge, or words of similar import in substance or effect.

2. The books and records of Saratoga Race Book were voluntarily surrendered to Revenue Agent Vasak for examination and audit.

3. On and after February 4, 1960, defendants were informed by agents of the Internal Revenue Service of possible criminal implications in the investigation, and thereafter made additional books and records available to the Revenue Agents and Special Agents of the Internal Revenue Service, voluntarily and with the knowledge and consent of the defendants, Mr. Don E. Ashworth, the accountant, and Mr. John B. Lewis, the attorney.

As conclusions of law from the foregoing facts, the Court finds:

1. The consent of the defendants to the examination of the books and records of Saratoga Race Book was voluntarily and understandingly given.

2. The consent of the defendants was not obtained by fraud or misrepresentation.

3. The evidence so obtained should not be suppressed.

## OPINION

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *"; and the Fifth Amendment states: "No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

With respect to the Fourth Amendment, it is established that a search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied. Channel v. United States (9 C.C.A.1960), 285 F.2d 217;

United States v. Page (9 C.C.A.1962), 302 F.2d 81.

■ When an individual, however, who has been accosted by an enforcement officer, voluntarily obtains and surrenders to the officer physical objects which prove to be evidence of crime, it cannot realistically be said that the situation poses a problem of consent to search under the Fourth Amendment and Rule 41, F.R.Cr. P. On the contrary, the issue is one of voluntary self-incrimination under the Fifth Amendment. For example, if in United States v. Page, supra, the defendant, instead of saying there is "nothing here * * * go right ahead and search the whole place" (thus consenting to a search), had said "just a minute" and then had gone to a back room and returned with a package of narcotics which he handed to the officers, the issue would have been one of self-incrimination under the Fifth Amendment, rather than consent to search under the Fourth Amendment.

■■ In the instant case, over a period of several months, the defendants voluntarily made available to Revenue Agent Vasak, working in the offices of Don E. Ashworth, defendants' public accountant, egg crates full of ticket stubs of wagers made at the Saratoga Race Book, which Vasak checked against the gross wagers reported on the accounting records and tax returns of the taxpayer. Although the motion to suppress the evidence so obtained is purportedly made under Rule 41 attacking a claimed unlawful search and seizure, there was no search within the meaning of the Fourth Amendment. An examination or testing of a physical object, whether a book of account, a written contract or a jar of white powder which had been voluntarily surrendered to an investigator, is not a search. It is our view that the instant motion is a proper pre-trial motion authorized by Rule 57(b), F.R.Cr.P.: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

Obvious similarity to the situation presented by a motion under Rule 41(e) for return and suppression of evidence unlawfully seized, justifies adaptation of those procedures to the instant motion.

■ With respect to the Fifth Amendment, the Government contends that the so-called "required records exception" (Shapiro v. United States, 1947, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787; United States v. Clancy, 7 C.C.A.1960, 276 F.2d 617) exempts all records required by law to be maintained by persons subject to the federal excise tax on wagers (26 U.S.C. § 4403) from the protection of the Fifth Amendment. The exact holding of the Shapiro case is that books and records required by law to be kept and maintained under the Emergency Price Control Act could be subpoenaed and that the immunity section of the Act would not protect the defendant against the use of such records as evidence against him in a criminal prosecution. The defendant there did not assert and insist upon his privilege against self-incrimination. The exact holding of the Clancy case is that books and records which are required by law to be kept and maintained are not *private* papers which are immune from seizure under a valid search warrant. Cf. Takahashi v. United States, 9 C.C.A.1944, 143 F.2d 118. We cannot interpret either of such decisions as abolishing the protection of the Fifth Amendment with respect to a person's books and records merely because one or more of innumerable state and federal laws may require records of that type to be kept. Cf. Russell v. United States, 9 C.C.A.1962, 306 F.2d 402. The Internal Revenue Code requires all taxpayers to keep and maintain adequate records to support their self-assessment returns. 26 U.S.C. § 6001.

The issue here remaining is whether defendants' records were obtained by the Agents in violation of their rights under the Fifth Amendment. Defendants assert a distinction based upon the type of agent who is conducting the investigation, that is, that the duties and responsibilities of an Internal Revenue Agent

are different from those of a Special Agent of the Intelligence Division in their respective dealings with the taxpayer, and, subordinately, that if the Intelligence Division of the Internal Revenue Service has had official knowledge of the case prior to the audit, then any agent who audits the books has the greater responsibilities of the Special Agent to the taxpayer. These include the duty to advise him of his constitutional rights and warn him that a criminal investigation is in progress. To the extent that United States v. Wheeler, D.C., 149 F.Supp. 445; United States v. Lipshitz, D.C., 132 F. Supp. 519; United States v. Guerrina, D.C., 112 F.Supp. 126, and Application of Bodkin, D.C., 165 F.Supp. 25, cited by defendants, may be interpreted to support this proposition, we disagree. The better-reasoned cases and stronger precedents are to the contrary.

If any such distinction is proper, it should not be based upon the type of agent who makes the investigation, but on the basic purpose of the investigation. A person should be entitled to the same constitutional rights regardless of the official title or technical designation of the government agent who appears to interview him. If the purpose of the investigation is to ferret out evidence of crime, rather than to determine mere civil liability, it may be argued that a warning should be given. In any investigation, however, the possibility of uncovering evidence of criminal misconduct is implicit, and the purpose of the investigation is a too illusory concept to form a rational and practical basis for a distinction. The tendency of modern authority is to require an advice and affirmative protection of constitutional rights if the person being interviewed has already been charged with the crime which is the subject matter of the interview, but to date no controlling authority has suggested such a requirement in a preliminary investigation prior to charge of crime.

■ On the contrary, respectable authority holds that no warning of constitutional rights or advice that a criminal investigation is in progress is requisite to the competency under the Fifth Amendment of confessions, admissions or other evidence voluntarily given by a person subsequently charged. Turner v. United States, 222 F.2d 926 (4 C.C.A.1955):

"It has been expressly held time and again in tax evasion and other criminal cases that it is not essential to the admissibility of statements secured by officers of the law from a defendant that he should be first warned that the information might be used against him in a criminal case, provided that it was voluntarily and understandingly given. United States v. Burdick, 3 Cir., 214 F.2d 768, 773; Montgomery v. United States, 5 Cir., 203 F.2d 887, 892; Lisansky v. United States, 4 Cir., 31 F.2d 846, 851, 67 A.L.R. 67; Hanson v. United States, 8 Cir., 186 F.2d 61, 64; Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090."

The requirements are that the confession, admission or other evidence must have been given freely and voluntarily, without oppression, duress or coercion, and that consent thereto must not have been induced by fraud, trickery or misrepresentation. Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; Turner v. United States, supra; United States v. Sclafani (2 C.C.A.1959), 265 F.2d 408; United States v. Burdick (3 C.C.A.1954), 214 F.2d 768; Vloutis v. United States (5 C.C.A.1955), 219 F. 2d 782; Montgomery v. United States (5 C.C.A.1953), 203 F.2d 887. There are many other authorities to the same effect.

■ Under the circumstances of this case, and the authorities cited, the bare fact that the Intelligence Division of the Treasury Department conducted a preliminary investigation undisclosed to the defendant does not constitute fraud or misrepresentation. We have found no affirmative fraud or misrepresentation inducing the surrender of the records.

■ The evidence material to a determination of the issue of the compe-

tency of the records as evidence within the context of the Fifth Amendment is in conflict. There is a dispute with respect to whether defendants' consent to examination of the records was obtained by fraud, misrepresentation or trickery vitiating the consent. This issue will be presented to the jury under proper instructions. Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Frank (3 C.C.A.1957), 245 F.2d 284.

The motion to suppress is denied.