UNITED STATES v. RECKIS et al.
Cr. No. 53-295.

United States District Court,
D. Massachusetts.

March 5, 1954.

Anthony Julian, U. S. Atty., William J. Koen, Asst. U. S. Atty., Boston, Mass., for United States.

Harry H. Toltz, Boston, Mass., for Albert Reckis and Edgar Reckis.

Alfred Levenson, Chelsea, Mass., for Bernard Melamed.

Charles J. Panagopoulos, Salem, Mass., for Nicholas Katsapetsis.

Francis Juggins, Boston, Mass., for Samuel Goldstein, also known as Samuel Gold.

FORD, District Judge.

The several defendants in this criminal case move to suppress evidence alleged to have been obtained by unlawful search and seizure. The indictment charges defendants with possession of a still set up, which they had failed to register, 26 U.S.C.A. § 2810(a), engaging in the business of distiller with intent to defraud the United States of the tax on the spirits distilled, 26 U.S.C.A. § 2833(a), possession of distilled spirits the immediate containers of which did not have the required tax stamps affixed thereto, 26 U.S.C.A. § 2803(a), and with conspiracy to commit the aforesaid substantive offenses.

The evidence in question was seized during a search of a building on the farm located on Granite Street, in Walpole, Massachusetts, owned by defendant Albert Reckis. There seems to be no dispute over the facts of the seizure, which were testified to by Burleigh W. Fletcher, Supervisor in charge of the Alcohol Tax Division. For several days prior to the search, which took place on February 17, 1953, the Reckis property and particularly the building later to be searched, had been under surveillance by Fletcher, who had observed it both by driving by on the street, and also from the woods to the rear of the property. No activity was noticed in or near the building in question, except that on one occasion he observed from the street that the lock had been removed from the door. About 1 a. m. on the morning of February 17, while observing the building from the woods, he detected an odor of stale mash. While there was sufficient time to procure a search warrant, Fletcher made no attempt to do so, because, as he testified, he did not believe he had enough evidence to justify the issuance of a warrant.

On February 17, 1953, Fletcher, with three fellow agents, arrived at the Reckis farm by automobile about 11:30 a. m. Entering the property they stopped the car on the driveway beside the farmhouse. Albert Reckis was seen coming from the rear of the house. Fletcher approached him saying, "The boss sent me down to fix the still." Reckis told him that he would have a big job since the hole was filled with water, the oil burner had been taken out, and the pump was broken and had been taken out in the field. Fletcher asked for the keys and, from a nearby building, Reckis obtained a ring of keys which he gave to Fletcher. In reply to another question of Fletcher, Reckis said he had been paid the rent of the barn for January.

At this point Fletcher informed Reckis that he and his companions were federal officers, and placed Reckis under arrest. He then told Reckis they wanted to see the premises. Reckis replied, "It's all right with me. I just rent the property to the others." Using the keys Reckis had given him, Fletcher, with

other agents, entered the suspected building and found there a large still pot, columns, valves, pumps, hose, tubs, tanks, cans, molasses, yeast, soda, and other equipment and materials adapted for use in the distilling of spirits. Some of this property was taken by the agents and the rest destroyed at the site. It is this seized property which constitutes the evidence which defendants now seek to suppress.

■■ The agents in this case had no search warrant, and no knowledge of facts which would constitute probable cause for the issuance of a warrant. Nothing has been shown to indicate that there were any circumstances to justify the officers in proceeding to an immediate search without a warrant. The entry on the property of Reckis was made under false pretenses. His acquiescence in the presence of the agents and his delivery of the key to the building to be searched were procured solely by the false representations of Fletcher that the presence of the visitors was for a business purpose connected with the illegal distilling operations being conducted on the premises. A search and seizure carried out by such methods, i. e., fraud, must be held to violate the guarantees of the Fourth Amendment. Search and seizure are equally unreasonable and equally violative of constitutional rights whether made subsequent to entry by force and violence, or to entry procured by stealth, fraud, or through social acquaintance, or in the guise of a business call. Gouled v. United States, 255 U.S. 298, 305, 306, 41 S. Ct. 261, 65 L.Ed. 647; Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 57 F.2d 93, 94; United States v.

Mitchneck, D.C., 2 F.Supp. 225; United States v. Guerrina, D.C., 112 F.Supp. 126, 128.[1]

■ The government argues, however, that the search and seizure was justified because Reckis gave his consent to it. The actions of Reckis prior to his arrest cannot be held to imply any valid consent to the subsequent search. They are all clearly infected with the fraud of the original entry. Reckis cannot be held to have consented to a search before he had any knowledge that the persons he was dealing with were federal officers or that they were there for the purpose of making a search. The statement of Reckis after his arrest was not an effective consent to a search of his property. One can, of course, freely consent to the search of his property and thereby waive any constitutional right to complain of the search and any subsequent seizure as unlawful. But the courts will not hold that a defendant has waived his rights under the Fourth Amendment unless there is convincing evidence to that effect. Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690, 694. The consent to a search, in order to constitute a waiver of defendant's constitutional rights must be unequivocal and specific. Karwicki v. United States, 4 Cir., 55 F.2d 225. It must clearly appear that it was freely and intelligently given. Kovach v. United States, 6 Cir., 53 F.2d 639. Especially is this true when the alleged consent is given after the official demand of an officer of the law and after the defendant has been placed under arrest. Peaceful submission to the authority of an officer is to be distinguished from an understanding and intentional waiver of a constitution-

1. Although Judge Woodbury evidently thought to the contrary, I do not believe that the majority in Chieftain Pontiac Corp. v. Julian, 1 Cir., 1954, 209 F.2d 657 intended to lay down the proposition generally that a search made as a result of a fraudulent representation would not be an unreasonable search within the meaning of the Fourth Amendment. The majority, however, did seem to say by way of dictum that where there was a fraudu-

lent representation and accused, induced by the fraud, turned over his property voluntarily, the Fourth Amendment would not be contravened. With this I do not agree. I cannot find any different situation where fraud induces the accused to hand over his private papers from that where the accused stands to one side and permits the agents to seize them. Gouled v. United States, supra.

al right. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436. The government in such situations has the burden of showing that there was a true consent, free of the fear or pressure which such circumstances necessarily bring to bear on the individual under arrest. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651; Ray v. United States, 5 Cir., 84 F.2d 654, 656; United States v. Slusser, D.C., 270 F. 818, 819; United States v. Novero, D.C., 58 F.Supp. 275, 281.

The statement of Reckis that it was all right with him for the officers to look at the premises was made immediately after he had been placed under arrest, and after he had been tricked into making incriminating admissions, and into handing over the keys to the suspected building. It must have been clear that whether he was willing or not, the officers were prepared to go through with their search. His acquiescence in such circumstances is certainly not the free and willing consent needed for an effective waiver of his constitutional rights. It did not justify the subsequent search and seizure.

With all these circumstances that seem to favor the movants, there remains an imperishable "fly in the ointment". It is a well established rule that one who has no proprietary or possessory interest in the premises searched or property seized may not supress evidence obtained by a search and seizure violative of the rights of another. Steeber v. United States, 10 Cir., 198 F.2d 615, 617, 33 A.L.R.2d 1425; Daddio v. United States, 2 Cir., 125 F.2d 924; Connolly v. Medalie, 2 Cir., 58 F.2d 629, and cases cited.

Certainly from the evidence presented, Reckis did not own the contraband, nor did he assert or have any possessory interest in the property. He leased the premises where the contraband was found to others, and the lessees, as far as the evidence in this case went, made no claim of ownership or possessory interest. In fact who the lessees were did not appear at the hearing. The other defendants, also movants to suppress, did not testify and made no claim of ownership and since only aggrieved parties, those having proprietary or possessory rights, have standing to suppress, it does not appear from the evidence that any wrong was done to them.

The defendant Reckis urged at the hearing on the motion that he was an aggrieved party because he owned the unleased portion of the premises and the officers passed through these premises to reach the leased barn where the contraband was found. There is no merit in this contention. The only property searched and the only property seized was on the leased property. Reckis was not aggrieved by the search and seizure. No wrong was done to him. The power to suppress the use of evidence unlawfully seized is a corollary to the power to regain it. Reckis had no power to regain property seized in the barn in question even if it were not contraband.

The motions to suppress are denied.