**UNITED STATES of America**

v.

**Louis LIPSHITZ, Defendant.**

**Cr. 43152.**

United States District Court
E. D. New York.

June 24, 1955.

---

10. Shehee v. Aetna Casualty & Surety Co., D.C., 122 F.Supp. 1, 2; 15 Am.Jur. 622, §§ 205.

See also 18 F.R.D. 102.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., by Edgar G. Brisach, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

Goldstein, Judd & Gurfein, New York City, by Murray I. Gurfein, Morris Wirth, David Zack, and Martin Young, New York City, of counsel, for defendant.

RAYFIEL, District Judge.

On March 12th, 1953, an indictment was filed against the above-named defendant, charging him with wilfully and knowingly attempting to evade the payment of part of his income tax due and owing for the calendar year 1946, in violation of Title 26 U.S.C. § 145(b). On July 10, 1953, the defendant moved (1) for an order suppressing certain evidence, and directing the return of certain papers and documents described in part in the affidavit filed in support of the motion, (2) for the inspection of the Grand Jury Minutes, and (3) for the dismissal of the indictment.

The defendant contended that the obtainment and use of the evidence in question was violative of his rights under the 4th and 5th Amendments of the Constitution of the United States. Because of certain express or implied admissions in the affidavit submitted in opposition to the motion, I directed, in a memorandum dated January 5, 1954, D.C., 117 F.Supp. 466, that a hearing be held, so that a comprehensive inquiry could be made into the manner in which such information was obtained, its nature and extent, and the direct and derivative use, if any, which was made thereof. The hearing was held on January 21, 24 and 25, 1955. Considerable testimony was adduced and documentary evidence received. Based on the supporting affidavits and the evidence produced at the hearing, the facts, so far as they are pertinent to the indictment and the motion under consideration, are as follows: At various times prior to June 30, 1948, representatives of the Bureau of Internal Revenue, including one Martin Obst, a Revenue Agent, now deceased, were engaged in auditing the books and records of Louis Lipshitz Dress Corporation, in which the defendant had a stock interest, and Louis Lipshitz Dress Company, in which he was a partner, for several years, including 1946, the year covered by the indictment. It appears, however that the information obtained as a result of such audit was not very extensive. On June 30, 1948, Special Agent Potts, a member of the Intelligence Unit of the Bureau, was assigned to work on the defendant's case with Revenue Agent Obst in what is referred to in the Bureau's Regulations as a "Joint Investigation", which, as appears from the testimony of Potts at the hearing, (S.M. p. 34 et seq.) contemplates an investigation in preparation for criminal prosecution. As Potts testified, the investigation was initiated by the Special Intelligence Unit, and was not ordered as the result of a Revenue Agent's report of fraud, disclosed by an audit of the taxpayer's books and tax return. Potts testified (S.M. p. 35) that it was his function to prepare the criminal features of the case *while Obst was supposed to make an audit of the taxpayer's books and determine the correct tax liability.*

Paragraph 678 of the Manual of Instructions for Revenue Agents, relating to the duties of agents in joint investigations, reads as follows: "In joint investigations the Special Agent will be responsible for the criminal features of the case and for the procurement of appropriate proof to establish the criminal charge should prosecution be authorized. The Internal Revenue Agent participating in such investigation will be responsible for the audit features of the case and for the preparation of a record of the proof to support the ad valorem addition to the tax. In such an investigation the Special Agent will be responsible for the method of procedure in, and conduct of, the investigation. The Special Agent in charge will be the officer responsible for a recommendation for or against criminal prosecution and may in his discretion recommend the assertion of an ad valorem addition to the tax in cases where criminal prosecution is not recommended."

On July 1, 1948, the day following his assignment to the case, Potts communicated with Obst by telephone, and inquired as to the then status of the previous investigation. Thereafter he met and conferred with Obst on October 5, 1948, and on at least five occasions in 1949, in connection with matters involved in the investigation. On these occasions he asked Obst to visit the offices of the Louis Lipshitz Dress Company and make copies of various book entries and records, including the ledger accounts, drawing accounts, capital account, loan account, accounts receivable, accounts payable and total debits and credits by years (pp. 173, 174, 177 S.M.) Potts also instructed Obst to obtain information respecting the accounts of Ruskin Fashion Salon, Anglo-African Shipping Co. and H. T. Stanley Company, three South African customers of the partnership.

Pursuant to those instructions Obst visited the offices of the Louis Lipshitz Dress Company on many occasions. Revenue Agent Silverman, testifying for the Government, stated (P. 79 S.M.) that Obst's records disclosed that he visited the said offices on 79 occasions, 19 of them between June 20, 1949, and July 26, 1949, and 13 of them between March 1, 1949 and March 21, 1949. On those visits he made copies of or extracts from various books, records, and accounts, which had been requested by Potts, part of which were included in the very large collection of papers, consisting of several hundred sheets, which were referred to during the hearing as Obst's work-sheets, and received in evidence as Exhibit "A".

The records and information obtained by Obst from the taxpayer's books were far more voluminous and extensive than the preparation of the "audit features of the case" (See Par. 678 of the Manual of Instructions, supra) required. Agent Silverman, when shown Exhibit A, testified that a routine examination of the taxpayer's books and records would not produce the extensive information contained in the said Exhibit.

Obst's daily reports disclosed that on many occasions during 1949 he visited the offices of the Louis Lipshitz Dress Company, after which he would call at the offices of the Intelligence Unit of the Bureau, at 253 Broadway, and at Government offices at 341 9th Avenue, where he would confer with Government agents.

Potts received the list of the partnership's accounts receivable from Obst in September, 1949. Obst died in October, 1949, and Revenue Agent Sheehan was assigned to replace him. The work-sheets (Exhibit A) remained in Sheehan's custody until February, 1950, when they were given to Potts. The latter admitted (PP. 167, 168 S.M.) that he obtained information from the said work-sheets concerning the accounts of and sales to customers of the partnership, and then compared the information so obtained with the customers' own rec-

ords. Among those customers were the three South African firms hereinabove named.

In his affidavit, submitted in opposition to the motion herein, Potts stated that he obtained his information relating to the defendant from sources other than Obst. That can hardly be true of the South African accounts, for he testified (P. 304 S.M.) that he asked Obst to look for the accounts of the said firms in the taxpayer's books and records, and (P. 306 S.M.) that the first lead he received respecting those accounts came from the Obst work-sheets. The Government has claimed, also, that it received its information respecting the three South African accounts through letters from anonymous sources, but such information could not have related to the matters covered by the indictment, since the letters in question, exhibits in the hearing, were received in May and June, 1945, long prior to the commencement of the tax year, 1946, referred to in the indictment. Potts testified that he visited the New York offices of the said three South African firms in March, April and May, 1950, and it may be assumed that he made use of the information he had obtained relating to their accounts with the taxpayer.

In or about June, 1950, Potts, probably using the list of accounts receivable for that purpose, circularized three hundred customers of the partnership. While the record does not disclose the nature or extent of the inquiries made of the customers, it is probable that they concerned transactions with the partnership.

The Government stated that its case against the defendant is based on unreported sales of the partnership. It was the defendant's burden to establish that the evidence relating to such sales was illegally obtained. I believe that the defendant has sustained his burden, at least with respect to information concerning the allegedly unreported sales to the three above-named South African firms. It was then the Government's obligation to prove that

the information so obtained did not lead, directly or indirectly, to the discovery of any of the evidence relating to sales to said firms which may have been presented to the Grand Jury. See U. S. v. Coplon, 2 Cir., 185 F.2d 629, 636. This, in my opinion, it failed to do.

I am satisfied that from June 30, 1948, the day Potts was assigned to the case, he together with Obst, were jointly engaged in the preparation of the case for the criminal prosecution of the defendant, and that they did not inform him, nor did he know, that they were so engaged. Pott's assignment of Obst, a Revenue Agent, to obtain, without the Defendant's knowledge and consent, extensive information and extracts from the taxpayer's books and records, far in excess of those required for the customary routine audit of a Revenue Agent, cannot be appreciably distinguished from the obtainment thereof by stealth or subterfuge.

It is difficult to ascertain precisely how much of what Obst learned during his frequent and extensive examinations of the taxpayer's records was used in the preparation of the case for criminal prosecution and the resultant indictment, but there is little doubt that the first, and considerable subsequent information relating to the three aforementioned South African accounts came from that source. It is my opinion, therefore, that the evidence relating to those accounts was obtained in violation of the defendant's rights under the 4th and 5th Amendments of the Constitution of the United States. If we are to give effect to those rights, we can do no less than to render useless the information and evidence so obtained. In Boyd v. United States, 116 U.S. 616, at page 635, 6 S. Ct. 524, at page 535, 29 L.Ed. 746, a substantially analogous case, involving compulsorily produced private books and papers, the Court said, "Though the proceeding in question is devested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." That would be equally true, in my opinion, of evidence obtained in part from independent sources, if it had its origin in information illegally acquired by the Government, as aforesaid. In the case of Nardone v. United States, 308 U.S. 338, at page 340, 60 S.Ct. 266, at page 267, 84 L.Ed. 307, dealing, inter alia, with the prohibition of particular methods of obtaining evidence, Justice Frankfurter said, "To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.' What was said in a different context in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, * * * is pertinent here: 'The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' See Gouled v. U. S., 255 U. S. 298, 307, 41 S.Ct. 261, 264, 65 L.Ed. 647 * * *. Here, as in the Silverthorne case, the facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the

knowledge gained by the Government's own wrong cannot be used by it' simply because it is used derivatively. 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L. Ed. 319".

Another case in point is United States v. Guerrina, D.C., 112 F.Supp. 126. Guerrina was indicted for the attempted evasion of payment of income taxes. He moved to suppress certain evidence, claiming that papers and documents were obtained from his files in violation of his rights under the 4th and 5th Amendments of the Constitution of the United States. It is unnecessary to set forth in detail the claims made by the defendant. It will suffice to state that the pertinent facts are substantially similar to those in the instant case. Judge Clary found, after a hearing of the issues, that the evidence had been illegally obtained, and granted the defendant's motion, saying, at page 129, "I can see no difference between a search conducted after entrance has been gained by stealth or in the guise of a business call, and a search for criminal purposes conducted under the guise of an examination for purely civil purposes. Whether the arrangement to have Agent Coram make the appointment with the defendant was by design to obtain entrance for Special Agent Pearson, or whether it was done innocently, the effect in so far as the defendant was concerned was the same."

The Government contends in its brief that after reargument "Judge Clary in effect reversed that portion of his opinion so much relied upon" by the defendant therein. I disagree. Judge Clary, relying on the cases of United States v. Burdick, 3 Cir., 214 F.2d 768, and Montgomery v. United States, 5 Cir., 203 F.2d 887, 893, modified his decision by directing that the information obtained by the agents with the consent of Guerrina would not be suppressed. In the instant case the Government made no claim that the information and evidence in question were obtained with the consent of Lipshitz. As a matter of fact, the contrary is true. Judge Clary adhered to that part of his decision which related to facts substantially similar to those in the instant case. The Burdick and Montgomery cases, supra, are inapposite, for the reason, among others, that the defendant in each said case voluntarily made the disclosures referred to therein.

By reason of the foregoing the defendant's motion to suppress is granted as to all evidence relating to the accounts of or sales to Ruskin Fashion Salon, Anglo-African Shipping Co., and H. T. Stanley Company, the three aforementioned South African concerns.

The hearing held herein failed to disclose the nature of the contents of the very numerous sheets which comprised Exhibit A (the Obst work-sheets), or the dates when and the circumstances under which the information therein was obtained. Hence, I am unable to pass upon the application to suppress the use of them as evidence. The Government may offer at the trial evidence which, directly or derivatively, had its origin therein. In such an event the trial judge, having an opportunity to see and hear the proffered evidence, will be in a position to determine whether the same, or the information which was the source thereof, was illegally acquired.

Motions for leave to inspect Grand Jury Minutes are rarely granted, and then only upon a clear showing of irregularity or impropriety. This the defendant has failed to provide. Nor have adequate grounds been shown for dismissing the indictment herein. Accordingly the application for items (2) and (3) of the relief sought herein is denied.

Settle order on notice.