UNITED STATES of America

v.

ONG GOON SING, also known as Yung Jin Teung, Defendant.

United States District Court
S. D. New York.
March 4, 1957.

Steinberg, Friedman & Blau, New York City, for defendant. Lester Friedman, New York City, of counsel.

Paul W. Williams, U. S. Atty., New York City, for the United States. Morton S. Robson, Asst. U. S. Atty., New York City, of counsel.

SUGARMAN, District Judge.

Defendant Yung Jin Teung moves "for the entry of an order directing the return to the defendant of property which was seized from him and suppressing for use as evidence anything so obtained on the ground that such property was illegally seized without a warrant." The matter was heard on oral testimony on January 11, 1957 and January 14, 1957.

I find as follows:

The movant and defendant claims to be the father of two boys now in Hong Kong. He had commenced an action in the United States District Court for the Eastern District of New York to establish their nationality as Americans.

The grand jury in the Southern District of New York in March 1956 was investigating Chinese passport frauds.

On March 26, 1956, the movant, a laundry operator, who has only a very limited

command of the English language, was at his place of business, a store at 255 Wyckoff Avenue, Brooklyn, New York. The rear part of this store was used by him as his residence.

In the early afternoon of that day these premises were visited by a Special Agent of the Department of State and an Investigator for the Immigration and Naturalization Service. These officers of the government had been sent to visit movant by an Assistant United States Attorney who testified that the purpose of the visit was "to get any evidence or statements they could concerning a large scale conspiracy [in] which I believe these various people were co-conspirators, and if possible, to induce these people to come to my office and to talk to me." (S.M. 118) The Assistant District Attorney's avowed purpose in sending the Special Agent and Investigator to movant's place of business was solely to develop a criminal case. (S.M. 126)

However, no mention of the true purpose of their visit was made to the movant. (S.M. 70) Instead, the Special Agent and Investigator told him that "we were endeavoring to find further proof in this case that he was the father of these two children, and that if he could show that to us, we would be satisfied to make known that information to the various agencies we represented, and in that way perhaps expedite the case, in connection with which he had an interest. * * * I told him that if he had anything further to show that he was related to these boys in Hong Kong and was their father, that it would help his case, to do that." (S.M. 51, 52) Thereupon, induced by this representation, movant produced for their inspection certain papers and documents. Certain of these papers movant claimed to own. The remainder movant disclaimed owning but said he was holding them for the person from whom he had purchased the laundry. The Special Agent and Investigator seized those of which movant dis-

claimed ownership without resistance on his part. They also took those of which movant claimed ownership with his consent and thereupon the Special Agent wrote out a statement in which the movant acknowledged *inter alia* that all the papers and documents were surrendered voluntarily. In that writing movant also stated that he could not accompany the Special Agent and the Investigator to the United States Attorney's office that day (as they had requested) but that he would on April 2, 1956. This statement, after some explanation in English by the Special Agent, was signed by the movant (Government Ex. 8). The Special Agent also wrote out instructions to guide the movant to the United States Attorney's office and this paper was given to him (Government Ex. 11).

When the movant appeared at the United States Attorney's office on April 2, 1956, he again acknowledged in writing the voluntariness of his delivery of all the papers and documents to the Special Agent and Investigator on March 26 (Government Ex. 9).

Movant was subsequently indicted, presumably on the basis of matters disclosed in the items obtained on March 26.

I conclude as follows:

■ (1) The movant's possessory interest in the papers taken on March 26, whether owned by him or not, gives him status to complain of the conduct of the government agents in regard thereto.[1]

■ (2) Under the circumstances of movant's inability to understand English and the "request" of the Special Agent and Investigator that he accompany them forthwith to the United States Attorney's office and in lieu thereof follow their written instructions to come there a week later, the obtainment by the government of all the papers was not with the movant's unequivocal and specific consent, freely and intelligently given without moral compulsion.[2]

1. United States v. Chieppa, 2 Cir., 1957, 241 F.2d 635.
2. Nelson v. United States, 93 U.S.App.D.C. 14, 208 F.2d 505, 508–510 (D.C.Cir.1953); Judd v. United States, 1951, 89 U.S.App. D.C. 64, 190 F.2d 649.

(3) Furthermore, the movant's surrender of that portion of the papers which he claimed to own was further tainted by the representation that they would be used for his benefit and the concealment by the Special Agent and Investigator of the true purpose of their visit.[3]

(4) All the property surrendered to and seized by the Special Agent and the Investigator came into the government's possession in violation of movant's rights under the Fourth Amendment to the Constitution.

(5) The motion should be and it is in all respects granted.

It is so ordered.

---

3. United States v. Lipshitz, D.C.E.D.N.Y. 1955, 132 F.Supp. 519, 523; United States v. Reckis, D.C.D.Mass.1954, 119 F. Supp. 687.