Fred A. Young, J.
The several requests to find and conclusions of law submitted by the claimant and the State marked by the court as found or refused are adopted by the court and shall be considered in conjunction with the memorandum-decision. Other requests are marked refused except as found for the reason that they may not be indicative of the court’s decision herein or may be only partly correct or so worded that an interpretation thereof or implication therefrom would convey an erroneous impression.
The claimant, Orval Bay Saunders, was arrested on August 12, 1952, at Islip, Long Island, New York, by members of the New York City police. He was taken to the 107th Precinct in Jamaica, Queens County, and held as a suspect in a murder case. At about 7:00 p.m., the same day, Sergeant J ames P. Gilsenan of the Long Island State Park police arrived at the 107th Precinct in company with Patrolman Aversano of the same organization and one Audrey Bauer, a 15-year-old girl, who had *883 been assaulted by an unknown man in Bethpage State Park on June 30, 1952. The girl’s mother also accompanied the police.
Sergeant Gilsenan, who had been investigating the assault upon the Bauer girl, informed her that he had a suspect and wanted her to see if the man could possibly be her assailant. Leaving Audrey, her mother and the patrolman in a corridor, Sergeant Gilsenan went to a room where the claimant was present together with 8 or 10 city detectives. He started to arrange a lineup. Miss Bauer looked into the room from the corridor through an archway, saw the claimant standing about 25 feet away and said, ‘ ‘ That’s him. That’s him.” At this time the proceeding had not reached an actual lineup. Miss Bauer was quite upset when she pointed out the claimant and she was taken to another room. Subsequently Saunders was brought to the room, stood in the doorway and was asked some questions. When the Bauer girl was present, the claimant’s brown and yellow sport shirt was lying on a table in the police station.
At about 2:00 a.m., the next day, Saunders was taken by Sergeant Gilsenan and Patrolman Aversano to the Bethpage police station where he was questioned further. Later on, between 3:00 and 4:00 p.m., he was taken to the Mineóla town lockup. At about 7:00 a.m., he was taken to the Nassau County Jail. Subsequently Saunders was indicted by the Nassau County Grand Jury for assault in the second degree, a felony.
From September 15 through September 20, 1952, he was tried before the Honorable Marcus G. Christ and a jury in the County Court, Nassau County, for the charges in the indictment. The trial concluded in a disagreement. Thereafter, the claimant was retried under the indictment from October 20, 1952, to October 24, 1952, in the same court before the same Judge and another jury. Again, the trial resulted in a disagreement. On December 9, 1952, an order to dismiss the indictment was granted by Judge Christ upon the grounds that there was a reasonable doubt as to whether the claimant was guilty of the crime charged. He was then discharged.
Claimant served and filed his notice of intention in this court on December 24, 1952, and his claim on August 11, 1954. The claim, a long and involved document, charges the City of New York, the State of New York, and the County of Nassau with false arrest, false imprisonment, fraud and deceit, malicious prosecution and suppression of evidence. It also charges conspiracy on the part of the police officers and governmental agencies, enumerated supra.
*884 The State of New York is not liable for the acts of local officers including the District Attorney of Nassau County. (Ritter v. State of New York, 283 App. Div. 833; Sofka v. State of New York, 202 Misc. 235.) This eliminates from our consideration the arrest and detention of the claimant as well as the alleged assault upon him by the New York City police. It also eliminates any alleged violation of the claimant’s rights by the law enforcement officers and officials of Nassau County.
Furthermore, we find no proof of any conspiracy on the part of the Long Island State Park police, the police of the City of New York and the County of Nassau to perpetuate and continue the false arrest of the claimant. Nor is there any proof of an assault upon the claimant by the State Park police. In fact, the claimant stated that he was never beaten by the State Police.
There remains for consideration the legality of the detention of the claimant by the Long Island State Park police and the question whether the said police suppressed certain allegedly material evidence.
There was a technical arrest of the claimant by the New York police upon suspicion of murder. We find the claimant was released by the New York City police to the Long Island State Park police who arrested him for the assault upon Audrey Bauer. This arrest was without warrant but a felony had in fact been committed. The claimant having been identified as the perpetrator thereof by the victim, the police officers had reasonable cause to believe that Saunders had committed the crime. Therefore, a warrant was not necessary. (Code Crim. Pro., § 177.)
The claimant challenges the manner and circumstances under which the Bauer girl identified the claimant but we find such identification was sufficiently positive and reasonable to justify the action of the officers in making the arrest. (Schultz v. Greenwood Cemetery, 190 N. Y. 276.) The indictment of the claimant by the Grand Jury of Nassau County in itself is prima facie evidence of probable cause. (Hopkinson v. Lehigh Val. R. R. Co., 249 N. Y. 296; Graham v. Buffalo Gen. Laundries Corp., 261 N. Y. 165.) The existence of probable cause is a defense to both actions for false arrest and malicious prosecution. (Freedman v. New York Soc. for Suppression of Vice, 248 App. Div. 517, affd. 274 N. Y. 559.)
However, the claimant charges that the Long Island State Police suppressed certain allegedly material evidence from the consideration of the Grand Jury. It is the claimant’s contention that the evidence in question tended to exonerate him
*885 The evidence allegedly suppressed consists primarily of the testimony of one Irving Langfelder who happened upon the scene of the crime shortly after the Bauer girl was taken to a hospital by a passing motorist. It also concerns the possible testimony which could have been elicited from certain persons Langfelder encountered at or near the scene of the assault. Langfelder did not testify before the Grand Jury or at the first trial. He was discovered by the claimant’s attorney during the course of the second trial and called as a witness in behalf of Saunders.
On July 30, 1952, Langfelder, while operating a car on Beth-page Parkway, was halted by a young man and two 13- or 14-year-old girls who were crying. While he was talking to the girls, a Long Island State Park Policeman named Wermlinger appeared on the scene. The girls told Langfelder that their friend had come out of the woods where she had been beaten up by a man and that a man and woman passing in a car had taken her away. They also said the girl’s bicycle had been stolen and the man was in the woods. This was somewhat different from his testimony at the trial in the County Court. On that occasion he said that the girls pointed out the road where the man had come from the woods. The boy and the two girls left with the patrolman to look for the Bauer girl while Langfelder went down to the road, pointed out to him by the girls, and entered the woods to see what he could find. He continued through the woods and came out at the far end of a street. He saw a man on a bicycle and began to pursue him. A dog came out and intercepted the witness. By the time a lady had come from a nearby house to call off the dog, the man on the bicycle had disappeared. Langfelder never saw the man’s features. All he knew was that the rider was wearing dark clothes and was approximately 300 feet away when he lost him.
Langfelder telephoned the park police from the woman’s house. By this time the police knew of the assault and suggested he go back and meet the officers at the Parkway. On the way back through the woods, he met a woman picking berries with three children. He told her what had happened and she showed him where the blue bicycle was in the woods. He also found a hair ribbon with the bicycle. He then went back to the Parkway and met Patrolman Sullivan of the State Park police who proceeded to investigate. The woman picking berries made a statement to Sullivan that a man driving a green Dodge sedan had backed his car out of an old road when she pulled in. She further stated he was wearing a light hunting cap. The police *886 looked for this man and also for the man on the bicycle but without success. Langfelder spent considerable time with Patrolman Sullivan searching the area.
Thereafter on several occasions Sergeant Gilsenan talked to him about his knowledge of the crime.
The foregoing constitutes a summation of the evidence allegedly withheld from the Grand Jury and the defendant. The claimant also contended that the names of the young man, the two girls and the berry picking woman were not supplied to the claimant. Nor was Officer Sullivan called until after Langfelder had testified upon the second trial. At that time the officer was called as a rebuttal witness. It is the claimant’s contention that this evidence was material to the issue and was suppressed by the Long Island State Park police. However, we can presume that the police performed their official duty and supplied the results of their investigations and the names of all potential witnesses to the District Attorney. The general presumption is “ that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done.” (Matter of Marcellus, 165 N. Y. 70, 77; Seelye v. State of New York, 178 Misc. 278, 283, affd. 267 App. Div. 941.)
To rebut this presumption and place the blame for the suppression of the allegedly material evidence upon the State’s agents, the claimant called Jacques H. Schiffer, Esq., the attorney who defended Saunders at both trials in the County Court. Mr. Schiffer attempted to testify that in the course of his summation, the Assistant District Attorney in the presence of Sergeant Gilsenan, stated that he, the District Attorney, had nothing to do with the suppression of the evidence, that he took what he had from the police and from what the police had given him. Upon the trial we sustained the objection of the State to this testimony. The Assistant District Attorney was not under oath and he was allowed considerable latitude in his summation, nor was he an agent of the State. The statement is hearsay and we cannot consider it. Furthermore, there is nothing to show that the Assistant District Attorney, who allegedly made'the statements, was not available to subpoena as a witness for this trial.
At this point we conclude that the claimant has failed to prove that the State’s agents suppressed the evidence in question. Furthermore, we do not consider Langfelder’s testimony of any great significance. There is nothing in the record herein to show that any of the witnesses whose names were denied to the *887 claimant actually saw the Bauer girl’s assailant or could make any significant addition to the evidence. We further conclude that even if the Long Island State Park police had suppressed the alleged evidence, it was not material or relevant to the issue.
The claim of the claimant herein must be and hereby is dismissed upon the merits.
The foregoing constitutes the written and signed decision of the court pursuant to section 440 of the Civil Practice Act.
Let judgment be entered accordingly.