John H. Galloway, Jr., J.
Defendant is awaiting trial upon three indictments charging him with burglary, third degree, petit larceny, bribery of police officers, unlawfully impersonating a police officer, and felonious possession of burglars’ instruments. He moves for an order directing the return to him of certain identified property which he claims Avas unlawfully seized from him at the time of his arrest by police detectives on October 17, 1960 in the City of White Plains, and that each item of said property be suppressed as evidence against him in the proceedings now pending against him.
The application is predicated on the determination made by the United States Supreme Court in Mapp v. Ohio (367 U. S. 643 [June, 1961]), wherein it was held that all evidence obtained by searches and seizures in violation of the Fourth Amendment is, by virtue of the due process clause of the Fourteenth Amendment, inadmissible in a State court.
Defendant contends that, under the circumstances and conditions existing at the time and place of his arrest, his arrest was illegal, and that consequently the search and seizure made without a warrant incident to such arrest were equally illegal.
We are confronted at the outset with the question of whether there is any appropriate procedure available in this court for the suppression of illegally obtained evidence. Prior to the Mapp decision, New York had adopted the rule alloAving the admissibility of unlawfully seized evidence in the courts of this State (People v. De Fore, 242 N. Y. 13, cert, denied 270 U. ,S. 657; Wolf v. Colorado, 338 U. S. 25). Despite such rule, there were *834 some remedies available whereby one affected by an unlawful search or seizure might, in some eirmcumstances, prevent the use of the unlawfully seized evidence at a trial. In most instances, however, for example, where property illegally seized during the course of an unlawful arrest was ordered returned to the owner in an article 78 of the Civil Practice Act proceeding’, the court nevertheless recognized that the illegality of the seizure would not affect the admissibility of the evidence, and nothing short of its destruction would prevent the prosecutor from taking steps to secure its presence in court at the trial. (Cf. Matter of Silfa, 5 Misc 2d375, affd. 3 A D 2d 818, affd. 3 N Y 2d 734.)
In other instances, the court recognized its inherent power to order on motion the return to the owner of books, papers and other articles illegally seized, where such motion was made before trial. (Cf. Matter of Both, 200 App. Div. 423; People v. Manko, 189 N. Y. S. 357, affd. 203 App. Div. 893; People v. Kinney, 185 N. Y. S. 645; State of New York v. One Hudson Cabriolet Auto., 116 Misc. 399.)
An injunction restraining the District Attorney and the Police Commissioner from using evidence derived from an illegal search and seizure against a defendant was granted, where the legality of the seizure was challenged prior to indictment, on a motion for the return of the property in question. (Cf. People v. J akira, 118 Misc. 303.) Although other courts of first instance have questioned the J akira opinion (e.g. People v. Esposito, 118 Misc. 867; People v. Belsky, 177 Misc. 125) in the absence of a clear and definitive decision by the Court of Appeals on the subject, the J akira case remained, up until the decision in Mapp v. Ohio (367 U. S. 643, supra) as the only effective basis in this State of attack upon the use of evidence unlawfully seized.
The exclusionary rule announced in Mapp v. Ohio, as now applicable to unlawfully seized evidence in State courts, quite clearly makes desirable legislative action to enact a uniform form of procedure for suppression of such illegally obtained evidence for the courts of this State. Meanwhile, until such legislation is forthcoming, we think it appropriately within the inherent powers of this court, in the conduct of its trials with respect to rules of admission and exclusion of evidence, to adopt and follow the Federal procedure for suppressing illegally obtained evidence, as set forth in subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure, to the extent it is adaptable in this court. It appears it is our duty to accord to this defendant and others effective recognition of their new found constitutional right, as now announced by the Supreme Court in Mapp —the exclusion of evidence which an accused may have been forced to give by reason of an unlawful search and seizure.
*835 Accordingly, we decide that the instant application should be entertained on its merits, the case having been ordered ready for trial subject to the determination of this application to suppress.
The facts and circumstances attending the alleged unlawful arrest and search and seizure incident thereto and defendant’s claims appear from the affidavits submitted on the application, and from the Grand Jury’s minutes which we have reviewed, as well as from the oral arguments of counsel for the People and the defendant.
During early October, 1960 there were numerous burglaries in apartment houses in the City of White Plains within a limited area including Broad Parkway. The police had alerted superintendents and janitors to be on the lookout for the defendant Manasek, well known as a burglar to the police since 1927 and particularly in 1948 when he was arrested and convicted as a fourth felony offender for the crime of burglary, and for the crimes of possession of burglars’ tools, namely, celluloid strips. The police had received numerous complaints of apartments being burglarized; a burglary detail which had been established had been investigating these burglaries for about two weeks within a mile radius of Broad Parkway. On October 17, 1960 two detectives on this detail were called to No. 1 Broad Parkway to meet the patrolman there. Upon arrival they were met by a third detective, also engaged in the investigation. The defendant was known to one of these detectives who had arrested him 12 years previously for burglary as above related. They observed the defendant on the sidewalk a short distance from the front of the apartment building at No. 1 Broad Parkway, stopped their patrol car and walked over towards him. As they approached the defendant he showed them a police shield and said to them: ‘1 What the hell is the matter with you guys ? Are you crazy? Can’t you see I am a police officer? What do you want to do, spoil this case for me ? ’ ’
The detective who recognized the defendant from his previous arrest of him in 1948 took the police shield from defendant’s hand, they placed him in the police car and took him to police headquarters. On the way, defendant removed his wallet from his pocket and handed it to one of the detectives saying: ‘ ‘ Listen, there is three thousand dollars in this; stop this car and let me go and we will forget everything ’ ’.
The wallet and money contents were retained in police custody. Defendant also removed a ring and handed it to the same detective and told him he could have it and to take it.
*836 After arrival at police headquarters defendant’s person was searched. Certain items of personal property were found in his clothing, including some items of jewelry which were the subjects of the two burglary and petit larceny indictments charging their theft from two apartments at No. 1 Broad Parkway on the day of defendant’s arrest, together with four or more pieces of celluloid strip which could be used for throwing the latch of a door lock.
Defendant contends that there was not the slightest justification or basis for his arrest when measured by the provisions of section 177 of the Code of Criminal Procedure which furnished the criteria for a lawful arrest without a warrant. Section 177 provides in material part: “A peace officer may, without a warrant, arrest a person, 1. For a crime, committed or attempted in his presence
Defendant says he was standing or walking alone on the public street in broad daylight; that the officers (who then knew nothing about the two burglaries) saw him do nothing relating to such burglaries which warranted his being stopped, questioned, searched and the taking from him what was found on his person; that, prior to his arrest, the officers had not seen him approach anyone with respect to his alleged impersonation of a police officer, nor was there any evidence of his having done so; and that he had not been seen using or attempting to use the celluloid strips claimed to be burglars’ instruments.
Defendant thus urges that the burglaries, which are the subject of the pending indictments, were not committed, if at all, in the presence of the arresting officers who at that time knew nothing about them; that there was nothing to connect him with the alleged burglaries; that accordingly they had no probable or reasonable cause, within the requirements of section 177, to make an arrest; and that therefore, in the absence of a warrant, his arrest was unlawful.
In view of the facts and circumstances here present it is our opinion that the arrest here made was for a crime committed by the defendant in the arresting officers’ presence — the defendant’s unlawful impersonation of a police officer, in violation of section 1846 of the Penal Law.
Irrespective of whether or not there was probable cause for an arrest prior to the time defendant flashed the police shield, it is clear to us that no arrest had been performed when the police approached him as they proceeded from their car across the sidewalk toward him as he stood or walked near the apartment building entrance. These officers were engaged in the investigation of a series of burglaries which had been committed *837 in the very vicinity in which defendant was observed by them. To seriously question their right of routine investigation and in furtherance thereof to approach the defendant and to ascertain why and what he was doing there is to assign to law-enforcement officers a futile mission in a fool’s paradise. (Cf. United States v. Bonanno, 180 F. Supp. 71 [U. S. Dist. Ct., S. D. N. Y., 1960].) Indeed, defendant appears to have taken one of the officers for a fool, for he flashed the police shield right in the face of one who immediately recognized him as the man he had arrested 12 years before for burglary. When defendant flashed that shield and spoke as he was quoted above, probable cause for an arrest for a crime committed in the officers’ presence had been established. (Cf. Rios v. United States, 364 U. S. 253 [1960].)
The legality of an arrest is to be determined by State law (United States v. Di Re, 332 U. S. 581 [1948]). Section 177 of the Code of Criminal Procedure providesA peace officer may, without a warrant, arrest a person, 1. For a crime, committed or attempted in his presence ”. The arresting officers’ action in this instance, as revealed in the Grand Jury minutes, was authorized and in compliance with the statute quoted. (Cf. Squadrito v. Griebsch, 1 N Y 2d 471 [1956].) Defendant was not arrested until after he had flashed the police shield and pretended to be, indeed, protested that he was, a police officer. Upon his being-recognized as Manasek, the convicted burglar of 12 years ago, he was placed in the police car. (Cf. Code Grim. Pro., § 167, which defines arrest as “ the taking of a person into custody that he may be held to answer for a crime ”.) The crime allegedly committed in the officers’ presence for which he was in our opinion lawfully arrested was that of falsely impersonating a police officer. (Penal Law, § 1846.) For this he was shortly thereafter indicted by the Westchester County Grand Jury, and such indictment is in itself prima facie evidence of probable cause for arrest. (Saunders v. State of New York, 14 Misc 2d 881, 884 and cases there cited.)
Section 1846 of the Penal Law provides in material part: “ Any person who shall, in this state, without due authority * * * hold himself out to any one as a * * * policeman * * * or peace officer * * * is guilty of a misdemeanor.”
It seems to us clear that defendant’s action with respect to the police shield together with his bare-faced claim to being a police officer constituted holding himself out as, posing as or impersonating a police officer without due authority, and if proved, would be criminal and punishable as a misdemeanor under section 1846. (Cf. People v. Chesnik, 123 Misc. 509, 513 [1922].) It is unnecessary to consider defendant’s contention that what *838 he did and said when confronted by the police officers did not constitute a crime (under Penal Law, § 931 — personating a police officer) committed in the presence of said police officers. We conclude, therefore, that the arrest of defendant was lawful, and established a proper basis for the search made incident to such arrest, and we come to the question of the reasonableness of the search itself.
The reasonableness of the search is to be determined by an analysis of the facts and circumstances of the case at bar — “ the total atmosphere of the case ”. (United States v. Rabinowitz, 339 U. S. 56, 66 [1950].) In our opinion, the “ total atmosphere ” of the case at bar, including the facts and circumstances attending the defendant’s arrest, establish the reasonableness of the search and seizure incident thereto.
A lawfully arrested person may be properly searched and any evidence found on him may be properly seized. (Agnello v. United States, 269 U. S. 20 [1925]; Weeks v. United States, 232 U. S. 383 [1914].) We find nothing in the papers submitted on this application or in the Grand Jury minutes to sustain a suggestion that the search and seizure were performed with any impropriety or in such a manner as to have been unreasonable or to constitute a denial of due process.
The approximately $3,000 in cash and the man’s diamond ring seized by the officers were the instrumentalities by which the alleged crime of bribery was committed by defendant almost immediately after his arrest and on their way to police headquarters. Officers making a legal search properly may seize instrumentalities of a crime being committed in their presence. (See Harris v. United States, 331 U. S. 145 [1947].) The celluloid strips, which, though they may be articles innocent in themselves, are at the same time usable and used as burglars’ tools, the possession of which is illegal. (See United States, v. Rabinowitz, 339 U. S. 56, supra [1950].) The other items of jewelry and personal property seized from defendant’s person were allegedly the fruits of burglaries which are the subject of two of the indictments upon which defendant awaits trial — crimes unrelated to the crime of impersonating a police officer, for which defendant was arrested and searched as an incident thereto. The possession of these articles as fruits of the burglary was larcenous, therefore a crime, and consequently they were properly seized. (See Abel v. United States, 362 U. S. 217 [I960].)
If we are correct in our views with respect to the status of all the articles seized from the defendant, then their seizure was legal and, if otherwise admissible, may be used as evidence *839 in the prosecution of the crimes for which defendant awaits trial, though some of such crimes may be unrelated to the crime which occasioned the arrest and the search incident thereto, in the instant case, which we have decided were legal. See Gouled v. United States (255 U. S. 298, 311, 312 [1921]) which held that property lawfully seized under a warrant issued in relation to one crime may be used as evidence to prove any other crime against the same accused as to which such property constituted relevant evidence.
On a motion to suppress, as here made, the burden is on defendant to prove that the evidence was obtained by an unreasonable and therefore unlawful search and seizure. (Nardone v. United States, 308 U. S. 338 [1939]; United States v. Lipshitz, 132 F. Supp. 519 [U. S. Dist. Ct., E. D. N. Y., 1955].) In our opinion defendant has failed to meet that burden.
On the other hand, we believe that there is sufficient information contained in all the papers, the arguments of counsel and the Grand Jury minutes to make a determination on this application without a further hearing on the issues raised thereon.
We conclude that defendant’s motion for the return of the property seized by the arresting officers and for the suppression of its use as evidence upon the trial of the pending indictments should be and it is in all respects denied.