**Donald Leroy BROWN, Appellant,**

v.

**Joseph R. BRIERLEY.**

**Civ. A. No. 19023.**

United States Court of Appeals,
Third Circuit.

Submitted Jan. 8, 1971.

Decided Feb. 19, 1971.

Donald Leroy Brown, pro se.

Robert P. Banks, Asst. Dist. Atty., Mercer, Pa., for appellee.

## OPINION OF THE COURT

Before GANEY, ADAMS, Circuit Judges, and WEIS, District Judge.

ADAMS, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus raises a difficult and vexing problem in interpreting the Fourth Amendment's prohibition against unreasonable searches and seizures.[1] Judge Sorg, of the District Court for the Western District of Pennsylvania, denied Brown's petition, and we affirm.

After a trial by jury, Brown was convicted of second degree murder and sentenced to a term of ten to twenty years at the State Correctional Institution, Pittsburgh, Pennsylvania. The single question raised by Brown in his appeal to the Pennsylvania Supreme Court and now presented to this Court is whether application of the Fourth Amendment's prohibition against unreasonable searches and seizures requires that a revolver given to the police by Brown should have been suppressed and not admitted as evidence against Brown during his murder trial.

The facts are undisputed and both sides rely upon the summary set forth in the opinion of the Pennsylvania Supreme Court, Commonwealth v. Brown,

---

1. Since this case presents a serious constitutional question, we feel compelled to comment on the fact that counsel has been less than helpful, having filed a "brief" which contained only a one-half page statement of facts and no argument. The fact that petitioner Brown filed a brief *pro se*, does not relieve counsel of his responsibilities to aid this Court in reaching a correct decision.

437 Pa. 1, 261 A.2d 879 (1970).[2] On January 19, 1968, two police officers, John Burke of Grove City Police Department and Thomas Petrovitch of the Pennsylvania State Police, after warning Brown of his rights, interviewed him regarding several unsolved murders. At this interrogation the officers were advised that Brown was in dire financial difficulties and shortly expected to be evicted from his apartment because of his inability to pay the rent. Petrovitch inquired whether Brown possessed any firearms, and when Brown replied that he had recently purchased a .32 caliber revolver, Petrovitch suggested that Brown sell the gun to raise money. Further, Petrovitch explained that he was acquainted with the person from whom Brown had purchased the gun and therefore Petrovitch could be helpful in reselling the gun to its original owner. Brown then gave the revolver to Petrovitch with instructions to sell it for not less than $25.00.[3] Complying with Brown's instructions, Petrovitch sold the gun to the original owner for $30.00. After completing the sale, Petrovitch borrowed the revolver from the purchaser and caused a ballistics test to be performed which established that the revolver was the one which had been used to kill a victim named Coulson. On cross-examination, Petrovitch admitted that at the time he promised to act as Brown's agent in selling the gun, he had formed the intention, undisclosed to Brown, to have the ballistics test effectuated.

Brown contends that the revolver, its holster, and bullets were improperly admitted into evidence at his trial, because the Fourth Amendment prohibits the police from obtaining evidence through deceit and misrepresentation, and that the deceit and misrepresentation in this case is the undisclosed intention on the part of Petrovitch to have the ballistics test performed. Brown relies upon Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), and a line of cases following that decision, and in particular on language employed by Justice John Clarke, writing for a unanimous Court in Gouled. "* * * [W]hether entrance * * * be obtained * * * by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment." 255 U.S. at 305–306, 41 S.Ct. at 264.

In Gouled, the Intelligence Department of the United States Army had investigated the defendant, because he was suspected of being a party to a conspiracy "to defraud the government through contracts with it for clothing and equipment." Pursuant to the Investigation a Private Cohen, following the orders of officers within Army Intelligence, "pretending to make a friendly call upon the defendant, gained admission to his office and, in [Gouled's] absence, without warrant of any character, seized and carried away several documents" which were subsequently admitted into evidence against Gouled. 255 U.S. at 304, 41 S.Ct. at 263. The significant difference between the seizure of evidence in Gouled and the procurement of Brown's revolver by the Pennsylvania Police is that in Gouled Private Cohen obtained the relevant evidence in the absence of the defendant, and thus *without Gouled's knowledge or consent.* It is clear in the

2. The Supreme Court of Pennsylvania in Commonwealth v. Brown, supra, in scholarly and thoughtful opinions, Justice Cohen, speaking for the majority and Justice Roberts dissenting, considered the issue raised by petitioner Brown in this Habeas Corpus proceeding. Because of the importance of the constitutional claims raised by Brown, we find it necessary to express our reasons for affirming the denial of Brown's petition.

3. It is unclear whether the police ever entered Brown's apartment. When Brown was at first questioned by the police, at Brown's request the interview took place in a police car parked in front of his apartment house.

present case that the defendant was aware that the two men who were questioning him were police officers and even more significantly Brown, unlike Gouled, voluntarily agreed to surrender possession of the gun which has now become part of the evidence supporting Brown's conviction.

Brown refers, also, to two district court decisions as authority for the proposition that the introduction into evidence of the revolver violated the Fourth Amendment: United States v. Lipshitz, 132 F.Supp. 519 (E.D.N.Y. 1955); Ong Goon Sing, 149 F.Supp. 267 (S.D.N.Y.1957). However, we doubt that these cases have the far-reaching impact which Brown would have us believe. In *Lipshitz* a revenue agent examined the records of the defendant ostensibly for the sole purpose of auditing the defendant's books to determine his tax liability. The District Court found as a fact that the revenue agent was gathering evidence relevant to a contemplated criminal prosecution and that in furtherance of this purpose the agent obtained, "without the Defendant's knowledge and consent, extensive information and extracts from the taxpayer's books and records, *far in excess of those required for the customary routine audit of a Revenue Agent * * * *"* (emphasis added) 132 F.Supp. at 523. Hence, the rationale underlying the *Lipshitz* decision is not, as Brown contends, that an agent of the Government must always disclose his investigative purpose when he harbors such motives. But rather *Lipshitz* decided only that the Fourth Amendment was violated when the Revenue Agent examined and seized information from the defendant's records during a search which exceeded the scope to which Lipshitz had consented. Since Lipshitz had authorized the Agent only to review his accounts to the extent necessary for a routine tax audit, evidence obtained through an examination of his records in excess of such permission was constitutionally impermissible.

Likewise, *Ong Goon Sing* does not establish a rule of law applicable to the facts presently before this Court, because in *Ong Goon Sing* the basis for the decision of the District Court was that "[U]nder the circumstances of movant's inability to understand English and the 'request' of the Special Agent and Investigator that he accompany them forthwith to the United States Attorney's office and in lieu thereof follow their written instructions to come there a week later, the obtainment by the government of all the papers was not with the movant's unequivocal and specific consent, freely and intelligently given without moral compulsion." 149 F. Supp. at 268.

■■ Hence, as in *Gouled* both district court cases contain findings of Fourth Amendment violations predicated upon factual determination that the police had seized evidence without the voluntary consent of the defendants. Thus, neither *Gouled, Lipshitz,* nor *Ong Goon Sing* control this case, since Brown does not contend that the alleged unreasonableness of this particular search resulted from the absence of his voluntary consent.[4] Rather, Brown argues that the search became unreasonable when his consent was procured through the police officers' guile and misrepresentation. However, since nothing in the record reveals coercion, and Brown does not make such an allegation, we think the method by which Petrovitch obtained possession of the revolver was permissible within the meaning of the Fourth Amendment. The most likely explanation for Brown's ingenuous actions is that he hoped to dissipate the suspicions of the police officers. Whether an attempt to lead the police astray in their investigation, or the act

---

4. There is a meaningful difference between seizing a citizen's private papers or information contained therein *without* permission, as was the circumstances of *Gouled, Lipshitz* and *Ong Goon Sing,* and obtaining possession of a revolver *with* the owner's consent but while harboring a concealed investigatory intent, as was accomplished in Brown's case.

of a gullible and inept criminal, Brown's uncoerced relinquishment of the gun did not constitute an unreasonable search and seizure.

To hold, as Brown urges, that the revolver must be suppressed under the circumstances of this case would be a long step toward outlawing all undercover police investigations. If the police must announce their investigatory intentions even when acting openly in their official capacities, it might well follow that the police also must explain their purposes to criminal suspects when carrying out undercover investigations in which it is necessary that the police camouflage their identity. Clearly, the quantum of "guile and deceit" is greater when the police assume disguises to penetrate illegal enterprises than when the police acknowledge their official identity, but conceal some, if not all, of their intentions.

Indeed, a line of Supreme Court cases has established that it is constitutionally permissible for the police to conduct criminal investigations without revealing their official status and their clandestine purposes: Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L. Ed.2d 312 (1966); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L. Ed.2d 374 (1966); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); see United States v. Haden, 397 F.2d 460 (7th Cir. 1968). *But see* Graves v. Beto, 424 F.2d 524 (5th Cir. 1970); cert denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 269 (1970).

In *Lopez* an Internal Revenue Agent secretly recorded the defendant's bribery attempt. The defendant contended that "in view of Davis' alleged falsification of his mission, he gained access to petitioner's office by misrepresentation and all evidence obtained in the office, *i. e.*, his conversation with petitioner, was illegally 'seized.'" The Court decided that the record of the conversation did not violate the Fourth Amendment. 373 U.S. at 437, 83 S.Ct. at 1387. As the Court explained, the Agent "was in the office with petitioner's consent, and while there he did not violate the privacy of the office by seizing something surreptitiously without petitioner's knowledge. Compare Gouled v. United States, *supra* * * *" In the present case, Brown voluntarily offered the evidence to the police, just as Lopez did. The fact that Brown was not informed of the policeman's motives does not distinguish his case from *Lopez*, because Lopez was also unaware of the Agent's undisclosed intention to preserve the oral evidence and to introduce it at trial.

In Lewis v. United States, *supra*, the Supreme Court considered a claim of error similar to that which was earlier raised in *Lopez*. It was argued in *Lewis* "that, in the absence of a warrant, any official intrusion upon the privacy of a home constitutes a Fourth Amendment violation and that the fact the suspect invited the intrusion cannot be held a waiver when the invitation was induced by fraud and deception." 385 U.S. at 208, 87 S.Ct. at 426. Since Lewis had voluntarily sold narcotics, although in ignorance of the fact that his customer was a police officer, the Court held that the rule of *Gouled* was inapplicable to the case before it, since "[d]uring neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business." 385 U.S. at 210, 87 S.Ct. at 427. The Supreme Court in passing noted "Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional per se. Such a rule would, for example, severely hamper the Government in ferreting out these organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest." 385 U.S. at 210, 87 S.Ct. at 427.

The holding in Hoffa v. United States, *supra*, is in accord with *Lopez* and *Lewis*. There the Court stated that a government informer need not reveal his se-

cret purpose before constitutionally seizing evidence obtained as a result of the defendant's misplaced confidence. Because Brown voluntarily relinquished the murder weapon and authorized its sale, under the facts of this case we think the subsequent performance of a ballistics test did not constitute an unreasonable search. That Brown realized his error by the time of trial does not require the courts to stretch the meaning of the Fourth Amendment so as to insulate Brown from the consequences of his voluntary surrender of the hand-gun. We are aware of no case holding that the Fourth Amendment prohibits reasonable, but also cunning, police work. Indeed, the recent decision of the Supreme Court in Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed. 524 (1971), lends support to our analysis. While in prison awaiting trial, Atchley discussed with an insurance investigator the method by which he shot and killed his wife. This conversation was electronically recorded with the consent of the insurance investigator, but without the knowledge or consent of Atchley, and eventually the recording was admitted into evidence at Atchley's trial over his objection that the conversation was seized in violation of the Fourth Amendment. The Supreme Court decided that Atchley's admissions were not coerced and, therefore, not seized in violation of the Fourth Amendment, even though Atchley was below average in intelligence and educational achievements, had not been warned of his right to remain silent, was without counsel, and the insurance investigator practiced a deception by failing to reveal that the police were recording the conversation in question.

We are attentive to the thrust of Justice Stewart's opinion in Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967): "* * * the Fourth Amendment protects people, not places." However, as succinctly expressed in United States v. Missler, 414 F.2d 1293, 1301 (4th Cir. 1969) "* * * Katz teaches that Fourth Amendment protection extends only to situations in which the complaining person had a reasonable and legitimate expectation of privacy." And, as this Court had occasion to say in Government of Virgin Islands v. Berne, 412 F. 2d 1055, 1058 (3rd Cir. 1969), in the context of a Fourth Amendment claim "each case must be judged on its own particular facts."

Under the circumstances here, when Brown authorized the sale of the revolver he voluntarily abandoned the shield provided by the Fourth Amendment—both under traditional concepts of the law of property and under the emerging right to personal privacy.

Accordingly, the order of the District Court will be affirmed.