**UNITED STATES of America, Plaintiff,**

v.

**John E. ADAMS, Defendant.**

**Crim. A. No. 74–106.**

United States District Court,
S. D. Ohio, E. D.

March 25, 1975.

---

William W. Milligan, U. S. Atty., W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, for plaintiff.

Joseph F. Dillon, Detroit, Mich., Terry P. Pugh, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

In an indictment filed on November 7, 1974, Dr. John E. Adams was charged with three counts of willfully and knowingly failing to file an income tax return as required by 26 U.S.C. § 7203.[1] After entering pleas of not guilty to all three counts, the defendant moved the Court for an order suppressing the use of information derived from his accounts receivable journal and from summary work sheets prepared by his accountant, reflecting his gross receipts for the years in question. An evidentiary hearing having been held on the motion, this opinion constitutes the Court's findings of fact and conclusions of law.

The tax investigation of Dr. Adams originated in February or March, 1972, (see Transcript p. 43) when Robert A. Purdum, a Revenue Agent of the Internal Revenue Service (hereinafter "IRS") called upon the defendant informing him that an audit was being conducted to determine his possible tax liability for the years 1968–70. In April, 1972, Agent Purdum was informed that Dr. Adams had retained counsel. According to the testimony, there was no further contact by government agents until approximately March, 1973. On March 13, Purdum met with defendant's counsel, Mr. Bruce Powell, and Mr. Edwin Howison, a certified public accountant hired by Mr. Powell to review the doctor's tax position. At the meeting Howison informed Agent Purdum that on the basis of the information available to him this appeared to be a fraud case which should be referred to the Intelligence Division of the IRS (see Transcript p. 12). Also in March, 1973, at a date not specified, Purdum, along with Special Agent Pfeiffer, called upon Dr. Adams; Pfeiffer identified himself as a Special Agent involved in criminal fraud investigations and advised Adams of his constitutional right to remain silent and to retain counsel. Dr. Adams at this time declined to make a statement to the agents and again evidently referred them to his counsel. Subsequent to the March 13, 1973 meeting, Agent Purdum again met with Mr. Powell and Mr. Howison. At this meeting these representatives of the defendant turned over to the agent for inspection work sheets prepared by Howison, which reflected the gross receipts of Dr. Adams for 1968–70. At a third meeting between these parties sometime in June 1973[2]

---

1. This section provides, in pertinent part, that:

   Any person . . . required by this title or by regulations made under authority thereof to make a return . . . who willfully fails to . . . make such return, . . . shall, in addition to other penalties provided by law, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

2. There is some discrepancy in the transcript concerning this date. Mr. Howison states that the accounts receivable journal was submitted to the agents perhaps four or five months after the March 13, 1973, meeting. Mr. Purdum testified that he and Agent Pfeiffer visited Dr. Adams in March, 1973, and that he received the gross receipt figures subsequent to this visit with Dr. Adams. However, according to the transcript, he also states at one point that he received the information in June, *1972*. (See Tran-

(see Transcript p. 23), at which Special Agent Pfeiffer was also present, the defendant's · accounts receivable journal was also shown to the two agents. Defendant contends that these materials were made available to the government because his representatives were misled into believing that the agents' investigation was solely civil, and not criminal, in nature. He further alleges that under the guise of a civil audit the agents actually conducted a criminal investigation, and, that since the information was thereby obtained in violation of his Fourth Amendment right to be free from an illegal search and seizure it must be suppressed by this Court. A review of the evidence presented, however, convinces me that the agents in no way affirmatively misled the taxpayer or his representatives into believing the investigation was exclusively civil in nature. I conclude, therefore, that the information was freely and voluntarily provided these agents by defendant's representatives and that accordingly the motion should be denied.

The fundamental question presented herein is whether, in light of the facts and circumstances existing at the time the information was made available, defendant's representatives consented to the examination by the federal agents. There are perhaps two preliminary matters that need to be resolved before the Court addresses itself to what it considers the basic inquiry. First, the Court would like to clarify the nature of the records and books which were made available. The first information given to the agents was in the form of summary work sheets prepared by Mr. Howison and members of his staff, at the direction of Mr. Powell and for the purpose of determining the possible tax liability of Dr. Adams for 1968 through 1970. These work sheets reflect, *inter alia*, the gross receipt of income by Dr. Adams for these years. In addition several

boxes of patient record and appointment books were also furnished the agents.

Second, the Court notes that at the hearing no objection was made by the government regarding the defendant's standing to assert a Fourth Amendment right herein. Nor do I think such an objection would be sustainable. Messrs. Powell and Howison were acting as representatives of the defendant in relinquishing the material to the agents and any fraud perpetrated upon these agents of the defendant is in effect a fraud upon the defendant himself. Conversely, should these men have voluntarily made the information available to the agents the defendant is bound by the decision of his counsel.

Having resolved these preliminary issues, I now turn to a consideration of the more fundamental question raised above: whether, in light of the surrounding facts and circumstances, defendant's representatives voluntarily consented to the examination by the IRS agents of the materials in question. At the hearing Mr. Howison testified that he had been a certified public accountant for almost thirty years; for twenty-seven of those he had himself been a Revenue Agent with the IRS. He stated he was personally well-acquainted with the two agents involved in the investigation, having worked with them during his tenure with the IRS. In addition, Mr. Howison is extremely knowledgeable about the practices and procedures of tax investigations, and admittedly realized that the defendant's case involved possible criminal violations. Although Mr. Howison testified that he would not have turned over the information had he known a criminal investigation was involved, he also testified that he only assumed the information would be used exclusively for civil purposes. He stated that no express guarantees had ever been made to him regarding how the information would in fact be used. (See

---

script p. 44.) The Court concludes that the transcript contains an error in this regard

and that the information was received *approximately June, 1973*.

Transcript p. 27.) Finally, Howison testified that he was well aware of the distinction between a Revenue Agent and a Special Agent,[3] and yet he and Mr. Powell continued to make information available even knowing that Special Agent Pfeiffer was involved in the investigation. Under these circumstances, I am unable to find that defendant's representatives, men of skill and experience in tax matters, were tricked into believing that there was no possibility of criminal charges being filed. Moreover, the taxpayer himself had been fully advised of his right to remain silent and to retain counsel.[4] Certainly, he was well aware in March, 1973, that a criminal investigation was underway. Although the testimony is not completely clear in this regard, I find that these warnings were given prior to Agent Purdum's receiving the gross income figures. I am satisfied, in light of the evidence adduced at the hearing, that no trickery or deception was perpetrated by either agent in order to secure evidentiary material Cf. *United States* v. *Turzynski*, 268 F.Supp. 847 (N.D.Ill.1967); *United States v. Wheeler*, 149 F.Supp. 445 (W. D.Pa.1957), rev'd on other grounds, 256 F.2d 745 (3d Cir. 1957), *cert. denied*, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958); *United States* v. *Guerrina*, 112 F.Supp. 126 (E.D.Pa.1953), modified, 126 F.Supp. 609 (E.D.Pa.1955).

For the reasons set forth above, the motion to suppress is hereby denied.

It is so ordered.

3. The United States Internal Revenue Service conducts both civil investigations to determine whether deficiencies may properly be assessed against taxpayers and criminal investigations to develop evidence for possible criminal prosecution. Civil investigations are conducted by a different division within the IRS than that which pursues criminal investigations. Civil investigators are known as Revenue Agents while those of the criminal Intelligence Division are referred to as Special Agents.

4. Special Agent Pfeiffer complied with IRS instructions to agents within the Intelligence Division. These instructions, which were reported in "IRS News Release No. 897, October 3, 1967," reprinted in 7 CCH 1967 Stand.Fed.Tax Rep. § 6832, are as follows:

In response to a number of inquiries, the Internal Revenue Service today described its prodecure for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations.

Investigation of suspected criminal tax fraud is conducted by Special Agents of the IRS Intelligence Division. This function differs from the work of Revenue Agents and Tax Technicians who examine returns to determine the correct tax liability.

Instructions issued to IRS Special Agents go beyond most legal requirements to assure that persons are advised of their Constitutional rights.

On initial contact with a taxpayer, IRS Special Agents are *instructed* to produce their credentials and state: '*As a special agent, I have the function of investigating the possibility of criminal tax fraud.*'

If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is *required* to advise the taxpayer of his Constitutional rights to remain silent and to *retain counsel.*